# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

ANAMARIA CHIMENO-BUZZI, on behalf
of herself and all others similarly situated,

      Plaintiff,

v.

HOLLISTER CO.; and ABERCROMBIE &
FITCH CO.,

      Defendants.

_____/

**CLASS ACTION COMPLAINT**

(JURY TRIAL DEMANDED)

Plaintiff, individually and on behalf of all others similarly situated, complains and alleges as follows based on personal knowledge as to herself, on the investigation of her counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters, and demands trial by jury:

## I.
## NATURE OF ACTION

1. Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Hollister Co. ("Hollister") and Abercrombie & Fitch Co. ("Abercrombie") (collectively, "Defendants") in negligently, knowingly, and/or willfully contacting Plaintiff on her cellular telephone without her prior express consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff seeks statutory damages for the TCPA violations committed by Defendants.

2. Hollister is a global clothing and lifestyle company that is owned by Abercrombie. Hollister and Abercrombie maintain their headquarters at 6301 Fitch Path, New Albany, Ohio 43054. Abercrombie's common stock is traded on the New York Stock Exchange under the symbol "ANF."

//

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

4. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Defendants are corporations that are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.  Defendants' contacts with this District, including directing text messages into this District, are sufficient to subject them to personal jurisdiction in this District.

## III.
## PARTIES

5. Plaintiff is an individual and was at all times mentioned herein a citizen and resident of Key Biscayne, Florida. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(10).

6. Defendants are, and at all times mentioned herein were, corporations incorporated under the laws of the State of Delaware and whose primary corporate headquarters are in New Albany, Ohio. Defendants are, and at all times mentioned herein were, corporations and "persons" as defined by 47 U.S.C. § 153(10).

7. Defendants maintain a significant media presence in major metropolitan markets across the United States.

## IV.
## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## ((TCPA), 47 U.S.C. § 227)

8. To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA regulates, *inter alia*, the use of automated telephone equipment or "autodialers." Specifically, the TCPA prohibits the use of autodialers to make any call, including text messages or SMS messages, to a wireless number in the absence of an

emergency or the prior express consent of the party called.  47 U.S.C. § 227(b)(1)(A)(iii).

9. According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, such autodialed calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and receiving and addressing such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls whether they pay in advance or after the minutes are used.

**V.**
**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

10. On or about June 4, 2014, Hollister and Abercrombie, by themselves or through an intermediary or intermediaries, caused to be transmitted the following text message to Plaintiff's cellular phone:

> #AwesomeOfTheDay:   ALL Jeans 50% off + FREE Shipping w/any Jeans purchase!  Online today only!  Dudes http://bit.ly/1m8Bbd2 Bettys http://bit.ly/1rJ62p8

11. The source of the above SMS message was identified as "743-722"

12. The following image is a screenshot of the offending SMS message received by Plaintiff on June 4, 2014, which was extracted from Plaintiff's cellular telephone:



13. The source of the message, which was transmitted to Plaintiff as "743-722," is linked to the official Hollister customer service line. *See* http://www.hollisterco.com/webapp/wcs/stores/servlet/CustomerService?catalogId=10201&storeId=10251&langId=-1&textKey=HELP_TEXTSTERMS&pageName=texts-terms.

14. The websites located at http://bit.ly/1m8Bbd2 and http://bit.ly/1rJ62p8 are owned and/or operated by Defendants and/or their agent(s), and automatically redirect visitors to http://www.hollisterco.com/shop/us/dudes-jeans?cmp=SMS_060414HCOUSudAllJeans50off and http://www.hollisterco.com/shop/us/bettys-jeans?cmp=SMS_060414HCOUSubAllJeans50off.

15. Both hollister.com websites to which visitors are redirected are owned and operated by Abercrombie and/or Hollister and are designed to advertise and sell Hollister clothing. The official registration records of the domain name hollisterco.com indicate that it is owned and administrated by Abercrombie.

16. Abercrombie and/or Hollister transmitted or caused to be transmitted, through an intermediary or intermediaries acting as its agent(s), the SMS message received by Plaintiff and reproduced in ¶ 12 above.

17. Because the SMS message received by Plaintiff and reproduced in ¶ 12 solicited Plaintiff to purchase Hollister clothing, the above SMS message constituted a solicitation to purchase goods from Defendants.

18. Abercrombie and/or Hollister transmitted or caused to be transmitted, through an intermediary or intermediaries acting as its agent(s), eighteen (18) additional SMS messages received by Plaintiff between June 6, 2014 and August 21, 2014, each of which was also from "743-722", also constituted a solicitation to purchase goods from Defendants, also directed visitors to websites that are owned and/or operated by Defendants, and also redirected visitors to hollister.com websites that are owned and operated by Defendants.

19. The following image is a screenshot of the offending SMS message received by Plaintiff

on June 6, 2014, which was extracted from Plaintiff's cellular telephone:



20. The following image is a screenshot of the offending SMS message received by Plaintiff

on June 8, 2014, which was extracted from Plaintiff's cellular telephone:



21. The following image is a screenshot of the offending SMS message received by Plaintiff on June 12, 2014, which was extracted from Plaintiff's cellular telephone:



22. The following image is a screenshot of the offending SMS message received by Plaintiff on June 16, 2014, which was extracted from Plaintiff's cellular telephone:



23. The following image is a screenshot of the offending SMS message received by Plaintiff on June 20, 2014, which was extracted from Plaintiff's cellular telephone:



24. The following image is a screenshot of the offending SMS message received by Plaintiff on June 24, 2014, which was extracted from Plaintiff's cellular telephone:



25. The following image is a screenshot of the offending SMS message received by Plaintiff on June 28, 2014, which was extracted from Plaintiff's cellular telephone:



26. The following image is a screenshot of the offending SMS message received by Plaintiff on July 2, 2014, which was extracted from Plaintiff's cellular telephone:



27. The following image is a screenshot of the offending SMS message received by Plaintiff on July 5, 2014, which was extracted from Plaintiff's cellular telephone:



27. The following image is a screenshot of the offending SMS message received by Plaintiff on July 11, 2014, which was extracted from Plaintiff's cellular telephone:



28. The following image is a screenshot of the offending SMS message received by Plaintiff

on July 17, 2014, which was extracted from Plaintiff's cellular telephone:



29. The following image is a screenshot of the offending SMS message received by Plaintiff

on July 23, 2014, which was extracted from Plaintiff's cellular telephone:



30. The following image is a screenshot of the offending SMS message received by Plaintiff on July 29, 2014, which was extracted from Plaintiff's cellular telephone:



31. The following image is a screenshot of the offending SMS message received by Plaintiff on August 5, 2014, which was extracted from Plaintiff's cellular telephone:



32. The following image is a screenshot of the offending SMS message received by Plaintiff on August 8, 2014, which was extracted from Plaintiff's cellular telephone:



33. The following image is a screenshot of the offending SMS message received by Plaintiff on August 12, 2014, which was extracted from Plaintiff's cellular telephone:



34. The following image is a screenshot of the offending SMS message received by Plaintiff on August 14, 2014, which was extracted from Plaintiff's cellular telephone:



35. The following image is a screenshot of the offending SMS message received by Plaintiff on August 21, 2014, which was extracted from Plaintiff's cellular telephone:



36. Plaintiff did not provide her cellular phone number to any Defendant.

37. Plaintiff has never provided any Defendant with consent to contact her via her cellular phone number.

38. Plaintiff has never conducted business with or otherwise formed a business relationship with any Defendant.

39. Plaintiff had no ability to request that the SMS calls end or to voice her complaints to a real person because the messages contained no method of opting-out of such messages.

40. All telephone contact by Defendants and/or affiliates, subsidiaries, or agents of Defendants to Plaintiff occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A). The SMS messages were sent from "743-722", which is a short code telephone number used by companies to message consumers *en masse*.

41. The telephone number that Defendants and/or affiliates, subsidiaries, or agents of Defendants used to contact Plaintiff was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

42. The complained of SMS messages constituted calls not made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

43. The complained of SMS messages constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4).

44. The complained of SMS messages constituted unsolicited advertisements as defined by 47 U.S.C. § 227(a)(5).

45. Plaintiff did not provide "express consent" or any other form of consent allowing Defendants and/or affiliates, subsidiaries, or agents of Defendants to place telephone calls or send SMS messages to Plaintiff's cellular phone by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

46. Under the TCPA, the burden is on Defendants to demonstrate that Plaintiff provided express written consent within the meaning of the statute. *See* FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).

## VI.
## CLASS ACTION ALLEGATIONS

47. <u>Class Definition</u>. Plaintiff brings this civil class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The "Class" which Plaintiff seeks to represent is comprised of, and defined as follows:

> All persons within the United States who received a non-emergency telephone call or SMS message from Hollister Co., Abercrombie & Fitch Co., and/or affiliates, subsidiaries, or agents of Hollister Co. and/or Abercrombie & Fitch Co. to a cellular telephone through the use of an automatic dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls or SMS messages.

48. Defendants, their employees, and agents are excluded from the Class.

49. Plaintiff reserves the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

50. Plaintiff and all Class members have been impacted and harmed by the acts of Defendants and/or their affiliates or subsidiaries.

51. This Class Action Complaint seeks money damages and injunctive relief.

52. This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the ascertainability, numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

53. Upon application by Plaintiff's counsel for certification of the Plaintiff Class, the Court may also be requested to utilize and certify subclasses in the interests of ascertainability, manageability, justice and/or judicial economy.

54. <u>Ascertainability</u>. This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed Class are clearly and easily ascertainable and identifiable. The members of the Class can be readily ascertained from Defendants' call records, database files and/or business records maintained by Defendants and/or their agents, affiliates, and subsidiaries. The Class members can be readily located and notified of this class action.

55. <u>Numerosity</u>. The number of persons within the Plaintiff Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

56. <u>Typicality</u>. Plaintiff received at least one call using an automatic telephone dialing system or an artificial or prerecorded voice, without her prior express consent or a prior established business relationship with Defendants within the meaning of the TCPA. Consequently, the claim of Plaintiff is typical of the claims of the members of the Class, and Plaintiff's interests are consistent with and not antagonistic to those of the other Class members she seeks to represent. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendants' violations and/or misconduct as alleged herein.

57. <u>Adequacy</u>. The Plaintiff Class representative has no interests that are adverse to, or which conflict with, the interests of the absent members of the Class and is able to fairly and adequately represent and protect the interests of such a Class. Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Class Action

Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

58. <u>Competency of Class Counsel</u>. Plaintiff has retained and is represented by experienced, qualified and competent counsel committed to prosecuting this class action. These counsel are experienced in handling complex class action claims.

59. <u>Commonality and Predominance</u>. There are well defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

a) Whether Defendant and/or affiliates, subsidiaries, or agents of Defendants made non-emergency calls to Plaintiff and Class members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

b) Whether Defendants and/or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendants obtained prior express consent (i.e., consent that is clearly and unmistakably stated) to place the calls complained of;

c) Whether Defendants and/or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendants had a prior established business relationship with recipients of the calls complained of;

d) Whether the complained of conduct was knowing and/or willful;

e) Whether Defendants are liable for damages, and the amount of such damages;

f) Whether Defendants and/or affiliates, subsidiaries, or agents of Defendants should be enjoined from engaging in such conduct in the future.

60. <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is

impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

61. Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications or that would substantially impair or impede the ability of such nonparty Class members to protect their interests. The prosecution of individual actions by Class members could establish inconsistent results and result in establishing incompatible standards of conduct for Defendants.

62. Defendants and/or affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and

belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**VII.**
**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**NEGLIGENT VIOLATIONS OF THE TELEPHONE**
**CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227)**

63. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

64. The foregoing acts and omissions constitute negligent violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227.

65. As a result of the alleged negligent violations of 47 U.S.C. § 227, Plaintiff and each member of the Class is entitled to an award of $500.00 in statutory damages for each and every call, including SMS messages, placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

66. Plaintiff and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

67. Plaintiff and Class members also seek an award of attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227)**

68. Plaintiff incorporates by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

69. The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227.

70. As a result of alleged knowing and/or willful violations of 47 U.S.C. § 227, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500.00 for each and every call, including SMS messages, placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

71. Plaintiff and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

72. Plaintiff and Class members also seek an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment in her favor, as follows:

1. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member $500.00 in statutory damages for each and every call/message that violated the TCPA;

2. As a result of the alleged willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for herself and each class member treble damages, as provided by the statute, of up to $1,500.00 for each and every call/message that violated the TCPA;

3. Injunctive relief prohibiting such violations of the TCPA in the future;

4. An award of attorneys' fees and costs to counsel to Plaintiff and the Class;

5. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the law firm representing Plaintiff as counsel for the Class; and

6. Such other relief as the Court deems just and proper.

//

//

//

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, on behalf of herself and the Class, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.


Dated:  August 25, 2014                           Respectfully submitted,

                                                  By: <u>/s/  David P. Milian      </u>

                                                  **CAREY RODRIGUEZ O'KEEFE
                                                  MILIAN GONYA, LLP**

                                                  **David P. Milian, Esq.**
                                                  Florida Bar No. 844421
                                                  dmilian@careyrodriguez.com
                                                  **Frank S. Hedin, Esq.**
                                                  Florida Bar No. 109698
                                                  fhedin@careyrodriguez.com
                                                  1395 Brickell Avenue, Suite 700
                                                  Miami, Florida 33131
                                                  Telephone: (305) 372-7474
                                                  Facsimile:  (305) 372-7475

                                                  *Attorneys for Plaintiff*