UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-23120-Civ-COOKE/TORRES

ANAMARIA CHIMENO-BUZZI, on behalf
of herself and all others similarly situated,

        Plaintiff,

v.

HOLLISTER CO.; and ABERCROMBIE &
FITCH CO.,

        Defendants.
                                          /

**DEFENDANTS' MOTION TO DISMISS OR TO STAY
AND INCORPORATED MEMORANDUM OF LAW**

**I.**

**INTRODUCTION**

Defendants J.M. Hollister, LLC d/b/a Hollister Co. ("Hollister") and Abercrombie & Fitch Co. (collectively, "Defendants") respectfully request that this Court temporarily stay this putative class action or dismiss the case without prejudice. On behalf of herself and a putative nationwide class, Plaintiff Anamaria Chimeno-Buzzi ("Plaintiff") asserts two causes of action under the Telephone Consumer Protection Act, 47 U.S.C. Section 227, *et seq.* ("TCPA"). The Federal Communications Commission ("FCC") – the federal agency charged by Congress with implementing and interpreting the TCPA – has pending before it multiple petitions that address the threshold issue in this case: whether there is liability under the TCPA for text messages to reassigned mobile numbers, such as Plaintiff allegedly experienced.

Specifically, Plaintiff alleges that starting "[o]n or about June 4, 2014," she began receiving text messages from Defendants. Complaint (D.E. 1) ¶ 10. She categorically denies

that she ever provided her mobile number to Defendants, ever did business with Defendants, or otherwise consented to receive text messages from Defendants. *Id.* ¶¶ 37-39. Although her actual mobile number is conspicuously absent from her Complaint, Plaintiff's number is otherwise available on her public website, at www.abuzzitherapy.com (listing 305-***-1810 ("1810 number") for Plaintiff), attached as Ex. A to accompanying Request for Judicial Notice ("RJN").

This 1810 number appears to have been reassigned to Plaintiff on or about June 1, 2014. It appears that – in contrast to Plaintiff's alleged experience – the prior holder of the 1810 number *twice* elected to receive text messages as part of Hollister's membership-based text marketing program ("Hollister Text Program"). *See* accompanying Declaration of Whitney Kaczor ("Kaczor Decl.") ¶¶ 3–4, 8 (records showing affirmative requests to receive text messages from 1810 number in August and October 2013), attached hereto as Exhibit 1. As for Plaintiff, as late as May 2014, she used a different mobile number, rather than the 1810 number. *See* Ex. B to RJN (excerpt from Plaintiff's website from May 2014, showing different mobile number). Only in June 2014, when the 1810 number was evidently reassigned to her, does Plaintiff allege that she began receiving texts from Hollister to which she never consented.

Plaintiff's TCPA claims thus appear to hinge on the very issue that the FCC is now determining – whether TCPA liability attaches "when a cellular telephone number has been reassigned." *Pickens v. American Credit Corp.*, No. 2:14-00201, 2014 U.S. Dist. LEXIS 131587, at *3 (S.D. Ala. Sept. 19, 2014). In this circumstance, the primary jurisdiction doctrine warrants that the Court stay this action for a reasonable period to allow the FCC to determine this issue in the first instance. *See id.*, 2014 U.S. Dist. LEXIS 131587, at *7 (staying the action for a

six month period based on pending FCC proceedings as to whether calls to reassigned mobile numbers violate the TCPA).

Defendants accordingly move this Court for an Order staying this action for a similar period of six (6) months, or such other period as the Court may deem appropriate. Alternatively, Defendants move the Court to dismiss the action, without prejudice to refiling after the FCC has ruled.

## II.

## BACKGROUND

**A.    Plaintiff Alleges TCPA Claims Based On Her Non-Consent To Text Messages.**

Plaintiff's Complaint arises out of her alleged receipt of text messages from Hollister from June 4, 2014 to August 21, 2014. *See* Complaint ¶¶ 10-35 (setting forth text messages allegedly "extracted from" Plaintiff's mobile phone). She alleges that she "did not provide her cellular phone number to any Defendant." *Id*. ¶ 37. She further alleges that she "has never conducted business with or otherwise formed a business relationship with any Defendant." *Id*. ¶ 38. Plaintiff claims that the messages she received "contained no method of opting out" from receiving text messages from Defendants. *Id*. ¶ 39.   And Plaintiff categorically denies ever having provided her affirmative consent to receive text messages from Defendants. *Id.* ¶ 37.

On that basis, Plaintiff asserts two claims, for negligent and willful violation of the TCPA. *See* Complaint ¶¶ 63-72 (First and Second Claim for Relief). Plaintiff sues not only on her own behalf, but also on behalf of a putative nationwide class of similarly situated persons who received non-emergency calls or text messages on their mobile numbers without providing "prior express consent for such calls or text messages." *See id*. ¶ 47.

Although her claims center on text messages to her mobile phone number, Plaintiff curiously omits from her Complaint any allegation identifying that number.[1] However, Plaintiff's number is available on her own public website. *See* www.abuzzitherapy.com (listing 305-***-1810 (1810 number) for Plaintiff), attached as Ex. A to RJN.[2]

Further, an archived version of Plaintiff's website from May 2014 shows that Plaintiff had a different mobile number at that time. *See* web.archive.org/web/20140516231626/http://abuzzitherapy.com/ (listing 336-***-8183 as Plaintiff's number as of May 16, 2014), attached as Ex. B to RJN.[3]

**B.     The Prior Holder Of The 1810 Number Elected To Enroll In The Hollister Text Program And Repeatedly Consented To Receive Texts From Hollister.**

In sharp contrast to Plaintiff's alleged experience, it appears that, on two occasions prior to June 2014, the then-holder of the 1810 number consented to receipt of text messages as part of the Hollister Text Program.

Specifically, records for the Hollister Text Program, as maintained in the ordinary course of business, show that on August 9, 2013, Defendants received a text message from the 1810

---

[1] This omission would support a motion to dismiss for failure to state a claim for relief, if Plaintiff's mobile number were not otherwise publicly available. *See Strand v. Corinthian Colleges, Inc.,* No. 1:13-cv-1235, 2014 U.S. Dist. LEXIS 52963, *10 (E.D. Mich. 2014) ("a TCPA plaintiff must plead the telephone number assigned to a cellular telephone service that was allegedly called in order to state a claim upon which relief can be granted * * *.").

[2] The Court may appropriately take judicial notice of the information appearing on Plaintiff's website, for the reasons set forth in full in Defendants' accompanying Request for Judicial Notice.

[3] The Court also may take judicial notice of the archived version of Plaintiff's website as of May 16, 2014. *See In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, No. 1:00-1898, 2013 WL 6869410, at *4 n.65 (S.D.N.Y. Dec. 30, 2013) (taking judicial notice of website as displayed on the Internet Archive and noting "[c]ourts have taken judicial notice of the contents of internet archives"); *Martins v. 3PD, Inc.*, No. CIV.A. 11-11313-DPW, 2013 WL 1320454, at *16 n.8 (D. Mass. Mar. 28, 2013) (taking judicial notice of "the various historical versions of the 3PD website available on the Internet Archive at Archive.org as facts readily determinable by resort to a source whose accuracy cannot reasonably be questioned.").

number, affirmatively enrolling the 1810 number in Hollister's Text Program.  Kaczor Decl. ¶ 4.  And in contrast to Plaintiff's allegation that she was never provided instructions as to how to decline further texts (Complaint ¶ 38), the holder of the 1810 number did receive such instructions in August 2013.  Indeed, within a minute of receiving the affirmative request from the 1810 number on August 9, the following confirming text was sent to the 1810 number with instructions on how to cancel the 1810 number's enrollment in the Hollister Text Program:

> Thanks for signing up for Hollister Texts!  Receive up to 2 msgs/wk.  Reply STOP to cancel.  Reply HELP for help. Msg&Data Rates May Apply.

Kaczor Decl. ¶ 5.  No reply to this text message from the 1810 number was provided.  *Id.* ¶ 6.

Likewise, on October 9, 2013, the following text was sent to the 1810 number:

> HCo:  Chance2win $500 giftcard!  Reply OK agrees 2 ongoing automated txt Offers&Entry.  Consent 2 txts not required 4 purchases/entry.  Rules: http://bit.ly/1e8ydD.

The prompt response to this text message from the 1810 number, which was received on October 9, 2013, was the following:  "OK."  Kaczor Decl. ¶¶ 7–8.

Thus, on two separate occasions, the prior holder of the 1810 number consented to receipt of text messages through the Hollister Text Program.  That prior holder of the 1810 number was not Plaintiff, if the allegations of her Complaint are credited.  She categorically denies ever having provided Defendants at any time her affirmative consent to receive text messages. Complaint ¶ 37.

At no time did Defendants receive a request from the 1810 number to cancel membership in the Hollister Text Program.  Kaczor Decl. ¶ 9.  The 1810 number has now been excluded from the Hollister Text Program and is no longer receiving text messages from Defendants.  *Id.* ¶ 10.

5

### C. The FCC Is Currently Considering Petitions Regarding The TCPA Issues Presented By Plaintiff's Claim.

The FCC has pending before it three petitions that address the threshold issue presented by Plaintiff's claims: whether there is liability under the TCPA for calls or text messages placed to "reassigned" wireless numbers. These petitions explain that mobile numbers are often reassigned without prior notice to calling parties, or any publicly available means by which to verify whether a number has been reassigned. We discuss each petition in turn.

#### 1. The Stage Stores Petition.

On June 4, 2014, Stage Stores, Inc. ("Stage Stores") filed a Petition with the FCC seeking a declaratory ruling clarifying the applicability of the TCPA and the related FCC regulations to situations where a "marketing text message [is] sent to [a] wireless [telephone] number for which the caller obtained prior express consent but where the wireless number has been reassigned from the consenting consumer to another person" without the caller having notice or knowledge of the reassignment. *See* Stage Stores Petition, Ex. C to RJN at 1. Stage Stores explains that scores of mobile numbers are reassigned on a daily basis, but that there "are no comprehensive public wireless number directories that can be accessed by callers to timely, efficiently or reliably verify whether or not a wireless number is one that can be accessed by callers" to verify whether the number has been reassigned. *Id*. at 3. Stage Stores contends that there should be a safe harbor from TCPA liability in this scenario, provided the caller updates its records and ceases further calls to the wireless number within a reasonable time after learning of the reassignment. *Id.* at 4.

The FCC has sought comments on the Stage Stores Petition. *See* FCC Public Notice, Consumer & Governmental Affairs Bureau, CG Docket No. 02-278 (July 9, 2014), available at http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db0709/DA-14-974A1.pdf, and

attached as Ex. D to RJN.  As explained in the Public Notice, the FCC "seeks comment on the applicability of the TCPA in this case * * *." *Ibid.*

In response, several organizations have submitted comments, including Twitter, Inc. (available at http://apps.fcc.gov/ecfs/document/view?id=7521752619); Wells Fargo (available at http://apps.fcc.gov/ecfs/document/view?id=7521752561); and the Computer & Communications Industry Association (available at http://apps.fcc.gov/ecfs/document/view?id=7521752319).  *See also* Exs. E–G of RJN (attaching same).  The comment period for the Stage Stores Petition is now closed.

### 2.     The United Healthcare Petition.

The Stage Stores Petition was preceded by two petitions filed earlier this year on the same general issue as to whether the TCPA applies in the case of reassigned numbers.  On January 16, 2014, United Healthcare Services, Inc. ("United Healthcare") filed a Petition for an expedited declaratory ruling that TCPA liability does not apply to non-telemarketing autodialed and prerecorded calls to wireless numbers for which valid prior express consent has been obtained, but which, unknown to the calling party, have been subsequently reassigned from one wireless subscriber to another.  *See* United Healthcare Petition, Ex. H to RJN at 7-8.  United Healthcare explains that a subscriber provides consent to receive calls or texts to the subscriber's mobile number, the number may be reassigned to a different subscriber without notice.  *See id.* at 2.  The potential for calls to the reassigned number cannot be reasonably prevented, because (among other things) there is no comprehensive public wireless telephone directory, and because individuals may change their phone numbers without notifying callers.  *See id*. at 3.  United Healthcare reasons that "[i]t is inconsistent with the letter and purpose of the TCPA to expose to litigation callers that dial numbers for which they have obtained 'prior express consent' to call

just because those numbers have been reassigned without the caller's knowledge." *Id.* (emphasis in original).

The FCC has sought and obtained public comment on the United Healthcare Petition. *See* FCC, Public Notice, Consumer & Governmental Affairs Bureau Seeks Comment on Petition for Expedited Declaratory Ruling from United Healthcare Services, Inc., CG Docket No. 02-278, available at http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db0206/DA-14-149A1.pdf, and attached as Ex. I to RJN.  Multiple interested parties have submitted comments, including comments proposing that the clarification for reassigned numbers "should apply not just to informational calls (let alone just health-care related informational calls), but also to collection and telemarketing calls" including "automated texts * * *."  Comments, Or, In The Alternative, Petition for Declaratory Ruling of Comcast Corporation, Ex. J to RJN at 1-2.  The comment period is now closed.

### 3. The ACA International Petition.

On February 11, 2014, ACA International ("ACA") filed a petition with the FCC endorsing the United Healthcare Petition and requesting, *inter alia*, that the Agency recognize a safe harbor for autodialed "wrong number" calls to wireless numbers.  *See* ACA Petition, Ex. K to RJN at 15-17, n.46.  Specifically, in its Petition, ACA reasons that "[u]nder current TCPA rules, a debt collector who dials a wrong number – despite taking substantial precautions and engaging in careful due diligence – can face enormous liability.  Even more alarming, a debt collector can be held liable for calling a number for which the debt collector had appropriate consent if that consumer no longer maintains the telephone number and the call is received by an unintended recipient – simply because the consumer never updated his or her account with, or otherwise communicated, new telephone number information. . . .  This result is patently unfair

…." *Id.* at 15. As ACA explains, "[w]ithout such a limited safe harbor, the TCPA is 'demand[ing] the impossible' from callers trying to comply with the statute." *Id.* at 17.

The FCC has identified ACA's petition, and the regulatory deadline for statements supporting or opposing the petition. *See* FCC Public Notice, Consumer & Governmental Affairs Bureau Reference Information Center Petition for Rulemaking Filed, Report No. 2999 (Feb. 21, 2014), available at http://transition.fcc.gov/Daily_Releases/Daily_Business/2014/db0221/DOC-325716A1.pdf, and attached as Ex. L to RJN. That deadline has now closed.

### 4. The FCC Is Expected To Act On The Pending Petitions.

The FCC has accepted and otherwise docketed all three petitions regarding reassigned numbers, and closed the comment period as to all three petitions. Notably, FCC Commissioner Michael O'Rielly has indicated that the FCC should "address th[e] inventory of petitions as soon as possible." Commissioner O'Rielly specifically identified the issue in the United Healthcare and ACA Petitions of whether there is liability for calls placed to "reassigned" phone numbers as one of the "important questions" pending before the FCC. Michael O'Rielly, *TCPA: It is Time to Provide Clarity* (Mar. 25, 2014), available at http://www.fcc.gov/blog/author/Michael%20O'Rielly.

### III.

### MEMORANDUM OF LAW

### A. The Action Should Be Stayed Or Dismissed Under The Primary Jurisdiction Doctrine.

The primary jurisdiction doctrine is "concerned with protecting the administrative process from judicial interference." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000) (citing *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)). It is "a doctrine specifically applicable to claims properly cognizable in court that contain some issue

9

within the special competence of an administrative agency." *Boyes*, 199 F.3d at 1265 (quotations omitted) (citing *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)). As the Eleventh Circuit has explained, the "main justifications" for the primary jurisdiction doctrine are twofold: (1) "the expertise of the agency deferred to"; and (2) "the need for a uniform interpretation of a statute or regulation." *Boyes*, 199 F.3d at 1265 (citations omitted). Where the primary jurisdiction doctrine applies, a court must either stay the case pending further action by the administrative agency, or otherwise dismiss the case without prejudice, if the parties would not be unfairly disadvantaged by a dismissal. *See Am. Dial Tone, Inc. v. Bellsouth Telecomms., Inc.*, No. 8:10-CV-2194-T-27MAP, 2010 WL 4627725, at *3 n.8 (M.D. Fla. Nov. 5, 2010) (noting that, under the primary jurisdiction doctrine, courts may stay or dismiss the action without prejudice) (citing *Reiter*, 507 U.S. at 268–269). "In short, the agency should have the first word." *Mississippi Power & Light Co. v. United Gas Pipeline Co.*, 532 F.2d 412, 417 (5th Cir. 1976) (quotations and citations omitted).

The doctrine thus promotes the dual interests of judicial economy and avoidance of inconsistent rulings. "It is precisely the purpose of the primary jurisdiction doctrine to avoid the possibility of conflicting rulings by courts and agencies concerning issues within the agency's special competence." *Davel Commc'ns, Inc. v. Quest Corp.*, 460 F.3d 1075, 1090 (9th Cir. 2006); *see also Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n.3 (11th Cir. 2001) (noting "primary jurisdiction doctrine 'is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties'") (quoting *Western Pac. R.R.*, 352 U.S. at 63).

These dual interests are particularly acute in the context of TCPA litigation, as the FCC's ultimate decision on the question of liability for calling reassigned numbers may well be entitled

10

to *Chevron* deference, or beyond the jurisdiction of this Court to review.  *See, e.g., Mais v. Gulf Coast Collection Bureau, Inc.,* No. 13-14008, 2014 U.S. App. LEXIS 18554, at *20 (11th Cir. Sept. 29, 2014) (district court lacked jurisdiction under Hobbs Act to review or reject validity of FCC ruling under TCPA).

Courts consider four factors in determining whether "'the doctrine properly is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise in uniformity in administration.'"  *In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig.*, 955 F.Supp.2d 1311, 1348 (S.D. Fla. 2013) (quoting *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)).  The bar for applying the doctrine is low:  a dismissal or stay is required where conduct is alleged which is "at least arguably protected or prohibited by a regulatory statute," and agency resolution of an issue "is likely to be a material aid to any judicial resolution."  *GTE Net LLC v. Cox Commc'ns, Inc.,* 185 F.Supp.2d 1141, 1144 (S.D. Cal. 2002) (citing *Ricci v. Chicago Mercantile Exchange*, 409 U.S. 289, 300-302, 93 S.Ct. 573, 34 L.Ed.2d 525 (1973)); *see also Mississippi Power & Light Co.*, 532 F.2d at 418, 420 (affirming primary jurisdiction referral, where agency's opinion "will be of material aid to the district court in the resolution of the damage action." (citing *Ricci,* 409 U.S. at 305)).

Each of the four factors applies in full, so as to warrant a stay or dismissal of this action.

**B.**     **The FCC Has Pending Before It The Threshold Issue Presented by Plaintiff's Claims Herein.**

The first factor of the above four-factor test is met here.  Focusing just on Plaintiff's individual claim, there plainly is a need to resolve the issue of whether TCPA liability attaches to

11

text messages to reassigned mobile numbers – the very issue presented by Plaintiff's individual claim for relief.  *See, e.g., Pickens*, 2014 U.S. Dist. LEXIS 131587, at *5.

Focusing more broadly on the putative class claims, the resolution of the pending FCC petitions will "materially aid" in determining whether and in what circumstances TCPA liability might attach to putative class members who received mobile calls or texts to reassigned numbers. *Mississippi Power & Light Co.,* 532 F.2d at 418.   Accordingly, this Court should either dismiss or stay this action and allow the FCC to address this pivotal "reassigned" number issue.

C.  **The FCC Has Regulatory Authority And Administrative Expertise As To The Issue Presented By Plaintiff's Claim.**

There can be no real dispute that the second, third and fourth factors are met here as well. As for the second factor, Congress has placed the interpretation and enforcement of the TCPA within the primary jurisdiction of the FCC.  As the Sixth Circuit has explained:

> Congress vested the FCC with considerable authority to implement the [TCPA].  The Act gives the agency power to "prescribe regulations to implement" the legislation, 47 U.S.C. §§ 227(b)(2), 227(c)(1), 227(c)(2), to exempt calls from the requirements of the Act, *id*. §§ 227(b)(2)(B), 227(b)(2)(C), to intervene in suits filed by state attorneys general, *id*. § 227(f)(3), and to enforce the provisions of the Act and its accompanying regulations, *see, e.g*., 22 FCC Rcd. 19396 (Nov. 9, 2007); 20 FCC Rcd. 18272 (Nov. 23, 2005).  In addition to these law-making and law-enforcing powers, the FCC has interpretative authority over the . . . Act, *see Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 . . . (1984), and its accompanying regulations, *see Auer v. Robbins*, 519 U.S. 452, 461 . . . (1997) . . . .

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459, 466-67 (6th Cir. 2010).   The Eleventh Circuit has just recently concurred.  *See Mais*, 2014 U.S. App. LEXIS 18554, at *14 ("Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA.") (citations omitted).

As for the third and fourth factors, a stay of the case is critical to ensure uniformity in the FCC's administration of the TCPA, while simultaneously allowing the FCC to decide critical issues that go to the core of its expertise. *See Pickens*, 2014 WL 4662512, at *2 ("Rather than precipitate the inconsistency that might be created by 'judicial interference,' this court can foster uniformity through 'preliminary resort' to the proper administrative body.") (citations omitted).

Indeed, precisely because the issue of TCPA liability for reassigned numbers falls so clearly within the authority and expertise of the FCC, district courts across the country have stayed TCPA cases involving reassigned numbers, pending the FCC's ruling on this issue. *See, e.g.*, *Pickens; see also Matlock v. United Healthcare Servs., Inc.*, 2014 U.S. Dist. LEXIS 37612 (E.D. Cal. Mar. 20, 2014) (staying TCPA action pending resolution of FCC petition concerning the meaning of the phrase "called party"); *Gusman v. Comcast Corp.*, No. 13-cv-1049-GPC (DHB), 2014 WL 2115472, at *1 (S.D. Cal. May 21, 2014) (staying TCPA action involving reassigned numbers on primary jurisdiction grounds); *Barrera v. Comcast Holdings Corp.*, No. 14-CV-00343-TEH, 2014 WL 1942829, at *2 (N.D. Cal. May 12, 2014) (staying TCPA action on primary jurisdiction grounds where a "central issue" presented in the case was pending before the FCC in the United Healthcare and ACA Petitions); *Heinrichs v. Wells Fargo Bank, N.A.*, No. C13-05434, 2014 U.S. Dist. LEXIS 72713 (N.D. Cal. Apr. 15, 2014) (staying TCPA action on primary jurisdiction grounds during pendency of United Healthcare and ACA Petitions); *Higgenbotham v. Hollins*, No. 14-cv-2087-JTM-TJJ, 2014 U.S. Dist. LEXIS 85584 (D. Kan. June 24, 2014) (staying TCPA action involving reassigned mobile number); *Hurrle v. Real Time Resolutions, Inc.*, No. C13-5765 BHS, 2014 U.S. Dist. LEXIS 22204 (W.D. Wash. Feb. 20, 2014) (same); *Wahl v. Stellar Recovery, Inc.,* No. 14-CV-6002-FPG, 2014 U.S. Dist. LEXIS 132200 (W.D.N.Y. Sept. 18, 2014) (same).

The same conclusion follows here, as the reassigned number issue presented in this case directly implicates the FCC's expertise and authority to implement the TCPA. Deferral to the Agency to resolve this threshold issue is appropriate. *See Pickens,* 2014 U.S. Dist. LEXIS 131587, at *2 (staying "reassigned" number TCPA action pursuant to primary jurisdiction doctrine, in light of FCC's "expertise in the telecommunications area due to the fact that the TCPA and other statutes have been entrusted to its care for interpretation and implementation.").

Defendants submit that a stay for a period of six (6) months would be appropriate, pending a determination by the FCC on this threshold issue. *See, e.g.*, *Pickens*, 2014 U.S. Dist. LEXIS 131587, at *7 (staying action for six-month period based on pending FCC proceedings as to whether text messages/calls to "reassigned" mobile numbers may violate the TCPA). If the Court so requests, the parties will file Joint Reports at regular intervals regarding the status of the relevant FCC proceedings.

## IV.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court stay this action for a period of six (6) months, or dismiss this action without prejudice to refiling following the FCC's rulings on the foregoing petitions.

### **Local Rule 7.1 Certificate of Good Faith Conference**

Pursuant to Local Rule 7.1(a)(3)(A), undersigned counsel certifies that he has conferred orally with counsel for Plaintiff, who objects to the relief requested in this Motion.

Dated: October 20, 2014

        s/Daniel O. Mena
        Daniel O. Mena, Esq.
        Florida Bar No. 059579
        Email: dmena@arhmf.com
        Martha R. Mora, Esq.
        Florida Bar No. 648205
        E-mail: mmora@arhmf.com
        Avila Rodriguez Hernandez Mena & Ferri LLP
        2525 Ponce de Leon Blvd., Suite 1225
        Coral Gables, FL 33134
        Telephone: (305) 779-3560
        Facsimile: (305) 779-3561
        *Attorneys for Defendants*

        AND

        s/Michael J. Stortz
        Michael J. Stortz, Esq. (*pro hac vice*)
        E-mail: Michael.Stortz@dbr.com
        Drinker Biddle & Reath LLP
        50 Fremont St., 20th Floor
        San Francisco, CA 94105-2235
        Telephone: (415) 591-7583
        Facsimile: (415) 591-7510

        AND

        Seamus C. Duffy, Esq. (*pro hac vice*)
        E-mail: Seamus.Duffy@dbr.com
        Meredith C. Slawe, Esq. (*pro hac vice*)
        E-mail: Meredith.Slawe@dbr.com
        Drinker Biddle & Reath LLP
        One Logan Square, Ste. 2000
        Philadelphia, PA 19103-6996
        Telephone: (215) 988-2440
        Facsimile: (215) 988-2757
        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on October 20, 2014 on all counsel or parties of record on the Service List below.

By: <u>  Martha R. Mora             </u>
      Martha R. Mora

## SERVICE LIST

David P. Milian, Esq.
dmilian@careyrodriguez.com
Frank S. Hedin, Esq.
fhedin@careyrodriguez.com
Carey Rodriguez O'Keefe Milian Gonya, LLP
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475
*Attorneys for Plaintiff*