# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

ANAMARIA CHIMENO-BUZZI, and
LAKEDRICK REED, on behalf of
themselves and all others similarly situated,

           Plaintiffs,

v.

HOLLISTER CO.; and ABERCROMBIE &
FITCH CO.,

      Defendants.

_____/

**FIRST AMENDED CLASS
ACTION COMPLAINT**

CASE NO. 1:14-CV-23120-MGC

(JURY TRIAL DEMANDED)

Plaintiffs Anamaria Chimeno-Buzzi and Lakedrick Reed (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, complain and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters, and demand trial by jury:

## I.
## NATURE OF ACTION

1.    Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Hollister Co. ("Hollister") and Abercrombie & Fitch Co. ("Abercrombie") (collectively, "Defendants") in negligently, knowingly, and/or willfully contacting Plaintiffs on their cellular telephones without their prior express written consent within the meaning of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiffs seek statutory damages for the TCPA violations committed by Defendants.

2.    Hollister is a global clothing and lifestyle company that is owned by Abercrombie. Hollister and Abercrombie maintain their headquarters at 6301 Fitch Path, New Albany, Ohio 43054.

**II.**
**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

4.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a) because Defendants are corporations that are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced.  Defendants' contacts with this District, including directing text messages into this District, are sufficient to subject them to personal jurisdiction in this District.

**III.**
**PARTIES**

5.      Plaintiffs are individuals and, at all times mentioned herein, were "persons" as defined by 47 U.S.C. § 153(10).  Plaintiff Chimeno-Buzzi is and was at all times mentioned herein a citizen and resident of Key Biscayne, Florida. Plaintiff Reed is and was at all times mentioned herein a citizen and resident of Mississippi.

6.      Defendants are, and at all times mentioned herein were, corporations incorporated under the laws of the State of Delaware and whose primary corporate headquarters are in New Albany, Ohio. Defendants are, and at all times mentioned herein were, corporations and "persons" as defined by 47 U.S.C. § 153(10).

**IV.**
**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**
**((TCPA), 47 U.S.C. § 227)**

7.      To address consumer complaints regarding certain telemarketing practices, Congress enacted the TCPA, 47 U.S.C. § 227, in 1991. The TCPA regulates, *inter alia*, the use of automated telephone equipment or "autodialers." Specifically, the TCPA prohibits the use of autodialers to

make any call, including text messages or SMS messages, to a wireless number in the absence of an emergency or the prior express written consent of the party called.  47 U.S.C. § 227(b)(1)(A)(iii)

8.      According to findings by the Federal Communication Commission ("FCC"), which is vested with authority to issue regulations implementing the TCPA, such autodialed calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and receiving and addressing such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for such incoming calls whether they pay in advance or after the minutes are used.

9.      One of the most prevalent alternatives is bulk advertising through so-called Short Message Services. "Short Message Services" or "SMS" is a messaging system that allows for the transmission and receipt of short text messages (usually no more than 160 characters) to and from wireless telephones.

10.      SMS messages are directed to a wireless device using the telephone number assigned to the device. When an SMS message is successfully transmitted, the recipient's wireless phone rings to alert him or her that a message has been received. Because wireless telephones are carried on their owner's person, SMS messages are received virtually anywhere in the world.

11.      According to a recent study conducted by the Pew Research Center, "Spam isn't just for email anymore; it comes in the form of unwanted text messages of all kinds – from coupons to phishing schemes – sent directly to user's cell phones."[1] In fact, "57% of adults with cell phones have received unwanted or spam text messages on their phone."[2]

12.      Unlike more conventional advertisements, SMS message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers

---

[1] Amanda Lenhart, Cell Phones and American Adults: They Make Just as Many Calls, but Text Less than Teens, Pew Research Center (2010), http://www.pewinternet.org/Reports/2010/Cell-Phones-and-American-Adults.aspx (last visited May 21, 2015).

[2] *Id.*

either for each text message they receive or incur a usage allocation deduction to their text messaging plan, regardless of whether the message is authorized.

13.     Due to the growing concern over unwanted SMS message advertisements, the Federal Communications Commission ("FCC") updated its rules on consent, requiring "prior express written consent" for calls or SMS messages that contain an "advertisement" or "telemarketing." *See* 47 C.F.R. 64.1200(f)(8) (defining prior express written consent).

**V.**
**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

14.     Hollister and Abercrombie operate substantially identical SMS text message marketing campaigns, each of which is aimed at delivering advertisements for consumer goods to individuals' cellular telephones *en masse*.

15.     The "Text Terms" page of both the Hollister website and the Abercrombie website provides the same set of instructions for individuals to opt-in and opt-out of receiving SMS text messages from each respective company.

16.     The "Text Terms" page of the Hollister website includes instructions for opting-in and opting-out of not only Hollister text messages, but also Abercrombie text messages.  And the "Text Terms" page of the Abercrombie website includes instructions for opting-in and opting-out of not only Abercrombie text messages, but also Hollister text messages.

17.     The following image is a screenshot of the "Text Terms" page of the Hollister website:

**HOLLISTER CO. US**
**TEXT TERMS & PRIVACY POLICY**

Updated: June 2014

By texting the keyword to 743722, or by signing up through our website, you are subscribing to receive ongoing marketing text messages via an automated system at the mobile number provided from Hollister Co. ("HCo") and, if selected, from Abercrombie & Fitch. Consent to receive texts is not required to make a purchase of any goods or services. You also agree to receive a confirmation opt-out text from any of our brands from which you have signed up to receive text messages, if you subsequently text **STOP** to that brand's shortcode as listed below or you unsubscribe through our website. You will receive up to two (2) messages per week for each brand for which you have signed up, as part of the ongoing text message program which may include the latest updates on products, contests, special offers, polls and trivia, or other similar content.

**MESSAGE AND DATA RATES MAY APPLY. You can opt out of texts at any time by replying STOP to any texts you receive, or text STOP to the shortcode below associated with the brand you no longer wish to receive texts from.** Before changing your mobile phone number, you agree that you will opt out of HCo Texts, or our other brand texts you may have signed up to receive. To opt back in with your new mobile number, text the keyword to the number below for the brand you want to receive texts from.

| | |
|---|---|
| Hollister Co. | 743722 |
| Abercrombie & Fitch | 231892 |
| abercrombie kids | 34824 |

Please consult your service agreement with your wireless carrier to determine your phone's pricing plan. This program may not be available on all wireless carriers. The carriers supported by this program are Alltel, AT&T, Boost, CinBell, Dobson, Sprint, T-Mobile, US Cellular and Verizon, but HCo may add or remove any wireless carrier from this program without notice.

For help related to texts, reply **HELP** to any text message received from any brand or text **HELP** to the number above associated with the brand.

For customer service related to your subscription to HCo Texts, please call toll free to 866.712.1032 or +1 925 359 2305.

Review our Privacy Policy **HERE.**

18.     The following image is a screenshot of the "Text Terms" page of the Abercrombie website:

**ABERCROMBIE & FITCH US**
**TEXT TERMS & PRIVACY POLICY**

Updated: June 2014

By texting the keyword to 231892, or by signing up through our website, you are subscribing to receive ongoing marketing text messages via an automated system at the mobile number provided from Abercrombie & Fitch ("A&F") and, if selected, from Hollister Co. Consent to receive texts is not required to make a purchase of any goods or services.  You also agree to receive a confirmation opt-out text from any of our brands from which you have signed up to receive text messages, if you subsequently text **STOP** to that brand's shortcode as listed below or you unsubscribe through our website. You will receive up to two (2) messages per week for each brand for which you have signed up, as part of the ongoing text message program which may include the latest updates on products, contests, special offers, polls and trivia, or other similar content.

**MESSAGE AND DATA RATES MAY APPLY. You can opt out of texts at any time by replying STOP to any texts you receive, or text STOP to the shortcode below associated with the brand you no longer wish to receive texts from.** Before changing your mobile phone number, you agree that you will opt out of A&F Texts, or our other brand texts you may have signed up to receive. To opt back in with your new mobile number, text the keyword to the number below for the brand you want to receive texts from.

| | |
|---|---|
| Abercrombie & Fitch | 231892 |
| abercrombie kids | 34824 |
| Hollister Co. | 743722 |

Please consult your service agreement with your wireless carrier to determine your phone's pricing plan. This program may not be available on all wireless carriers. The carriers supported by this program are Alltel, AT&T, Boost, CinBell, Dobson, Sprint, T-Mobile, US Cellular and Verizon, but A&F may add or remove any wireless carrier from this program without notice.

For help related to texts, reply **HELP** to any text message received from any brand, or text **HELP** to the number above associated with the brand.

For customer service related to your subscription to A&F Texts, please call toll free to 866.712.1032 or +1 925 359 2304.

Review our Privacy Policy here.

19.     The Hollister "Text Terms" page states: "By texting the keyword to 743722, or by signing up through our website, you are subscribing to receive ongoing marketing text messages via an automated system at the mobile number provided from Hollister Co. ("HCo") **and, if selected, from Abercrombie & Fitch.**" *See supra* ¶ 17 (emphasis added).

20.     The Abercrombie "Text Terms" page states: "By texting the keyword to 231892, or by signing up through our website, you are subscribing to receive ongoing marketing text messages via an automated system at the mobile number provided from Abercrombie & Fitch ("A&F") **and, if selected, from Hollister Co.**" *See supra* ¶  18 (emphasis added).

21.     According to the "Text Terms" pages depicted above in ¶¶ 17-18, Abercrombie and Hollister each claim that subscribers to their text marketing campaign will "receive up to two (2) messages per week for each brand for which you have signed up[.]" *See supra* ¶¶ 17-18.

22.     According to the "Text Terms" pages depicted above in ¶¶ 17-18, Abercrombie and Hollister each claim that an individual can opt-out of receiving texts "at any time by replying STOP to any texts you receive, or text STOP to the shortcode below associated with the brand you no longer wish to receive texts from." *See id.*

23.     On or about June 4, 2014, Hollister and Abercrombie, by themselves or through an intermediary or intermediaries, caused to be transmitted the following text message to Plaintiff Chimeno-Buzzi's cellular phone:

> #AwesomeOfTheDay:  ALL Jeans 50% off + FREE Shipping w/any Jeans purchase!   Online today only!   Dudes http://bit.ly/1m8Bbd2 Bettys http://bit.ly/1rJ62p8

24.     The source of the above SMS message was identified as "743-722"

25.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on June 4, 2014, which was extracted from her cellular telephone:



26.     On or about March 19, 2015, Hollister and Abercrombie, by themselves or through

an intermediary or intermediaries, caused to be transmitted the following text message to Plaintiff

Reed's cellular phone:

> HCo:     Move     fast.     Score     big!     Cards     up     for     grabs:
> http://bit.ly/ScoreHollister   NO   PURCHASE   NECESSARY.   Void
> in FL, NY & RI. Rules http://bit.ly/hollisterTCs

27.     The source of the above SMS message was identified as "743-722"

28.     The following image is a screenshot of the offending SMS message received by

Plaintiff Reed on March 19, 2015, which was extracted from his cellular telephone:



29.     The source of the above messages, which were transmitted to Plaintiffs as "743-722", is linked to the official Hollister customer service line. *See* http://www.hollisterco.com/webapp/wcs/stores/servlet/CustomerService?catalogId=10201&storeId=10251&langId=-1&textKey=HELP_TEXTSTERMS&pageName=texts-terms.

30.     The websites located at http://bit.ly/1m8Bbd2, http://bit.ly/1rJ62p8 and http://bit.ly/ScoreHollister are owned and/or operated by Defendants and/or their agent(s), and automatically redirect visitors to Hollister and Abercrombie websites, under the domain name Hollister.com, that advertise and sell commercial goods.

31.     The Hollister.com websites to which visitors are redirected are owned and operated by Abercrombie and/or Hollister and are designed to advertise and sell Hollister clothing.  The official registration records of the domain name Hollisterco.com indicate that it is owned and administrated by Abercrombie.

32.     Abercrombie and/or Hollister transmitted or caused to be transmitted, through an intermediary or intermediaries acting as its agent(s), the SMS messages received by Plaintiffs and reproduced in ¶¶ 12 and 15 above.

33.     Because the SMS message received by Plaintiffs and reproduced in ¶¶ 12 and 15 solicited Plaintiffs to purchase Hollister clothing, the above SMS message constituted a solicitation to purchase goods from Defendants.

34.     Abercrombie and/or Hollister transmitted or caused to be transmitted, through an intermediary or intermediaries acting as its agent(s), twenty-two (22) additional SMS messages received by Plaintiffs between June 6, 2014 and March 28, 2015, each of which was also from "743-722", also constituted a solicitation to purchase goods from Defendants, also directed visitors to websites that are owned and/or operated by Defendants, and also redirected visitors to hollister.com websites that are owned and operated by Defendants.

35.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on June 6, 2014, which was extracted from her cellular telephone:



36.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on June 8, 2014, which was extracted from her cellular telephone:



37.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on June 12, 2014, which was extracted from her cellular telephone:



38.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on June 16, 2014, which was extracted from her cellular telephone:



39.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on June 20, 2014, which was extracted from her cellular telephone:



40.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on June 24, 2014, which was extracted from her cellular telephone:



41.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on June 28, 2014, which was extracted from her cellular telephone:



42.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on July 2, 2014, which was extracted from her cellular telephone:



43.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on July 5, 2014, which was extracted from her cellular telephone:



44.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on July 11, 2014, which was extracted from her cellular telephone:



45.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on July 17, 2014, which was extracted from her cellular telephone:



46.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on July 23, 2014, which was extracted from her cellular telephone:



47.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on July 29, 2014, which was extracted from her cellular telephone:



48.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on August 5, 2014, which was extracted from her cellular telephone:



49.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on August 8, 2014, which was extracted from her cellular telephone:



50.    The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on August 12, 2014, which was extracted from her cellular telephone:



51.    The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on August 14, 2014, which was extracted from her cellular telephone:



52.     The following image is a screenshot of the offending SMS message received by Plaintiff Chimeno-Buzzi on August 21, 2014, which was extracted from her cellular telephone:



53.     The following image is a screenshot of the offending SMS message received by Plaintiff Reed on March 28, 2015, which was extracted from his cellular telephone:



54.     The following image is a screenshot of the offending SMS message received by

Plaintiff Reed on April 11, 2015, which was extracted from his cellular telephone:



55.     The following image is a screenshot of the offending SMS message received by Plaintiff Reed on April 12, 2015, which was extracted from his cellular telephone:



56.     The following image is a screenshot of the offending SMS message received by Plaintiff Reed on April 23, 2015, which was extracted from his cellular telephone:



57.     Neither Plaintiff provided his or her cellular phone number to either Defendant.

58.     Neither Plaintiff was able to request that the SMS calls end or to voice a complaint to a real person because the SMS messages contained no method of opting-out of such messages.

59.     All telephone contact by Defendants and/or affiliates, subsidiaries, or agents of Defendants to Plaintiffs occurred via an "automated telephone dialing system" as defined by 47 U.S.C. § 227(b)(1)(A). The SMS messages were sent from "743-722", which is a short code telephone number used by companies to message consumers *en masse.*

60.     The telephone number that Defendants and/or affiliates, subsidiaries, or agents of Defendants used to contact Plaintiffs was assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

61.     The complained of SMS messages constituted calls not made for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

62.     The complained of SMS messages constituted telephone solicitations as defined by 47 U.S.C. § 227(a)(4).

63.     The complained of SMS messages constituted advertisements as defined by 47 C.F.R. 64.1200(f)(1).

64.     Neither Plaintiff provided "prior express written consent" or any other form of consent allowing Defendants and/or affiliates, subsidiaries, or agents of Defendants to place telephone calls or send SMS messages to his or her cellular phone by means of an "automatic telephone dialing system," within the meaning of 47 U.S.C. § 227(b)(1)(A).

65.     Under the TCPA, the burden is on Defendants to demonstrate that Plaintiffs provided express written consent within the meaning of the statute. *See* FCC Declaratory Ruling, 23 F.C.C.R. at 565 (¶ 10).

**VI.**
**CLASS ACTION ALLEGATIONS**

66.     <u>Class Definition</u>. Plaintiffs bring this civil class action on behalf of themselves individually and on behalf of all other similarly situated persons as a class action pursuant to Fed. R. Civ. P. 23. The "Class" which Plaintiffs seek to represent is comprised of and defined as follows:

> All persons within the United States who received a non-emergency telephone call or SMS message from Hollister Co., Abercrombie & Fitch Co., and/or affiliates, subsidiaries, or agents of Hollister Co. and/or Abercrombie & Fitch Co. to a cellular telephone through the use of an automatic dialing system or an artificial or prerecorded voice and who did not provide prior express written consent for such calls or SMS messages.

67.     Defendants, their employees, and agents are excluded from the Class.

68.     Plaintiffs reserve the right to modify the definition of the Class (or add one or more subclasses) after further discovery.

69.     Plaintiffs and all Class members have been impacted and harmed by the acts of Defendants and/or their affiliates or subsidiaries.

70.     This Class Action Complaint seeks money damages and injunctive relief.

71.     This action may properly be brought and maintained as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). This class action satisfies the ascertainability, numerosity, typicality, adequacy, commonality, predominance and superiority requirements.

72.     Upon application by Plaintiffs' counsel for certification of the Class, the Court may also be requested to utilize and certify subclasses in the interests of ascertainability, manageability, justice and/or judicial economy.

73.     _Ascertainability_. This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed Class are clearly and easily ascertainable and identifiable. The members of the Class can be readily ascertained from Defendants' call records, database files and/or business records maintained by Defendants and/or their agents, affiliates, and subsidiaries. The Class members can be readily located and notified of this class action.

74.     _Numerosity_. The number of persons within the Class is substantial, believed to amount to tens of thousands of persons dispersed throughout the United States. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

75.     _Typicality_. Each Plaintiff received at least one call using an automatic telephone dialing system or an artificial or prerecorded voice, without her prior express written consent to Defendants within the meaning of the TCPA. Consequently, the claims of Plaintiffs are typical of the claims of the members of the Class, and Plaintiffs' interests are consistent with and not antagonistic to those of the other Class members they seek to represent. Plaintiffs and all members

of the Class have been impacted by, and face continuing harm arising out of, Defendants' violations and/or misconduct as alleged herein.

76.    <u>Adequacy</u>. As Class representatives, the Plaintiffs have no interests that are adverse to, or which conflict with, the interests of the absent members of the Class and are able to fairly and adequately represent and protect the interests of such a Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

77.    <u>Competency of Class Counsel</u>. Plaintiffs have retained and are represented by experienced, qualified and competent counsel committed to prosecuting this class action. These counsel are experienced in handling complex class action claims.

78.    <u>Commonality and Predominance</u>. There are well defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

a) Whether Defendant and/or affiliates, subsidiaries, or agents of Defendants made non-emergency calls to Plaintiffs and Class members' cellular telephones using an automatic telephone dialing system or an artificial or prerecorded voice;

b) Whether Defendants and/or affiliates, subsidiaries, or agents of Defendants can meet their burden to show Defendants obtained prior express written consent (as defined by 47 C.F.R. 64.1200(f)(8)) to place the calls complained of;

c) Whether the complained of conduct was knowing and/or willful;

d) Whether Defendants are liable for damages, and the amount of such damages;

e) Whether Defendants and/or affiliates, subsidiaries, or agents of Defendants should be enjoined from engaging in such conduct in the future.

79.     Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express written consent required under the statute to authorize calls to their cellular telephones.

80.     Additionally, the prosecution of separate actions by individual Class members may create a risk of multiple adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications or that would substantially impair or impede the ability of such nonparty Class members to protect

their interests. The prosecution of individual actions by Class members could establish inconsistent results and result in establishing incompatible standards of conduct for Defendants.

81.     Defendants and/or affiliates, subsidiaries, or agents of Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate. Moreover, on information and belief, Plaintiffs allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## VII.
## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### NEGLIGENT VIOLATIONS OF THE TELEPHONE
### CONSUMER PROTECTION ACT
### (47 U.S.C. § 227)

82.     Plaintiffs incorporate by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

83.     The foregoing acts and omissions constitute negligent violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

84.     As a result of the alleged negligent violations of 47 U.S.C. § 227, each Plaintiff and each member of the Class is entitled to an award of $500.00 in statutory damages for each and every call, including SMS messages, placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

85.     Plaintiffs and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

86.     Plaintiffs and Class members also seek an award of attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE**
**TELEPHONE CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227)**

87.     Plaintiffs incorporate by reference the foregoing paragraphs of this Class Action Complaint as if fully stated herein.

88.     The foregoing acts and omissions constitute knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

89.     As a result of alleged knowing and/or willful violations of 47 U.S.C. § 227, each Plaintiff and each member of the Class is entitled to treble damages of up to $1,500.00 for each and every call, including SMS messages, placed or transmitted in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

90.     Plaintiffs and all Class members are also entitled to, and do seek, injunctive relief prohibiting such conduct violating the TCPA in the future.

91.     Plaintiffs and Class members also seek an award of attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment in their favor, as follows:

1. As a result of the alleged negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each class member $500.00 in statutory damages for each and every call/message that violated the TCPA;

2. As a result of the alleged willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each class member treble damages, as provided by the statute, of up to $1,500.00 for each and every call/message that violated the TCPA;

3. Injunctive relief prohibiting such violations of the TCPA in the future;

4. An award of attorneys' fees and costs to counsel to Plaintiffs and the Class;

5. An Order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the law firms representing Plaintiffs as counsel for the Class; and

6. Such other relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all claims so triable.

Dated:  May 28, 2015                          Respectfully submitted,

By: /s/  David P. Milian
**CAREY RODRIGUEZ O'KEEFE**
**MILIAN GONYA, LLP**

David P. Milian
Florida Bar No. 844421
dmilian@careyrodriguez.com
Frank S. Hedin
Florida Bar No. 109698
fhedin@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile:  (305) 372-7475

**SCOTT D. OWENS, P.A.**
Scott D. Owens
scott@scottdowens.com
Patrick C. Crotty
patrick@scottdowens.com
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954.589.0588
Fax: 954.337.0666

Joseph J. Siprut*
*jsiprut@siprut.com*
Ismael T. Salam*

*isalam@siprut.com*
**SIPRUT PC**
17 North State Street Suite 1600
Chicago, Illinois 60602
Telephone: 312.236.0000
Fax: 312.241.1260

**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Robert Adhoot*
radhoot@ahdootwolfson.com
Tina Wolfson*
twolfson@ahdootwolfson.com
Brad King*
bking@ahdootwolfson.com
Telephone: 310.474.9111
Fax: 310.474.8585
*Attorneys for Plaintiffs*
*\*Pro Hac Vice Application Forthcoming*