**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

| | |
|---|---|
| ANAMARIA CHIMENO-BUZZI, and LAKEDRICK REED, on behalf of themselves and all others similarly situated, )<br><br>)<br><br>)<br><br>)<br>Plaintiffs, )<br><br>)<br>v. )<br><br>)<br>HOLLISTER CO., and ABERCROMBIE & )<br>FITCH CO., )<br><br>)<br>Defendants. )<br>_____ ) | Case No. 14-cv-23120-MGC<br><br>Hon. Marcia G. Cooke, Presiding<br><br>Hon. Magistrate Edwin G. Torres |

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES
AND SERVICE AWARDS TO THE CLASS REPRESENTATIVES**

Plaintiffs Anamaria Chimeno-Buzzi and Lakedrick Reed, by and through undersigned Class Counsel and pursuant to Federal Rule of Civil Procedure 23(h), submit this motion for attorneys' fees and service awards.[1]

## I.       INTRODUCTION

On September 10, 2015, Plaintiffs entered into a Settlement Agreement with Defendants Hollister Co. and Abercrombie & Fitch Co. to resolve the class action entitled *Chimeno-Buzzi, et al. v. Hollister Co., et al.*, Case 1:14-cv-23120-MGC (S.D. Fla.) (the Settlement Agreement was filed on September 10, 2015 as ECF Docket No. ("Dkt.") 126-1).  Pursuant to the Settlement Agreement, Defendants agreed to pay $10,000,000.00 to establish a Settlement Fund, which is to be used to provide the exclusive recovery and relief for the Settlement Class, any reasonable attorneys' fees and costs awarded by the Court to Class Counsel, any service awards awarded by the Court to Plaintiffs Chimeno-Buzzi and Reed, and the costs of notice and settlement administration.  On December 18, 2015, the Court granted preliminary approval of the Settlement (Dkt. 129).

The Settlement was obtained after more than a year of high-risk litigation, during which time Class Counsel expended more than 2,000 attorney hours despite the significant risk and uncertainty of a litigation that was vigorously defended by Defendants and their counsel at every stage.

Class Counsel respectfully submit that the $10 million Settlement represents an excellent result for the Settlement Class, and respectfully move the Court for an award of attorneys' fees and expenses in the total amount of one-third (⅓) of the Settlement Fund, well within presumptive standards in the Eleventh Circuit; and service awards to each of the two representative Plaintiffs in the amounts of $5,000.00.

As detailed below, Class Counsel's requested fee is well within the reasonable market price for contingent legal services in complex class action litigation, and is consistent with recent fee awards to class counsel in similar TCPA cases in this District.   The reasonableness of Class

---

[1]        Unless otherwise defined herein, all capitalized terms shall have the same force, meaning and effect as ascribed in the Settlement Agreement, filed on September 10, 2015 (Dkt. 126-1).

Counsel's request is further confirmed by various additional factors that district courts of the Eleventh Circuit consider in awarding fees, such as the risks presented by the case, the quality and amount of work performed by Class Counsel, and the results achieved on behalf of the Settlement Class.

## II.   BACKGROUND

### A.      The Settlement

The terms and conditions of the Settlement are contained in the Settlement Agreement signed by the Parties.  (Dkt. 126-1.)  The Settlement Agreement requires Defendants to pay $10,000,000.00 into a common, non-reversionary Settlement Fund for the benefit of Class Members (*id.* at § IV.A. to IV.B.), and further requires that Defendants provide training concerning TCPA compliance to key managers responsible for text communications to customers, (*id.* at § IV. C.)[2]

On December 18, 2015, the Court entered an Order Granting Preliminary Approval, finding that "the Settlement Agreement and the settlement it incorporates appears fair, reasonable, and adequate." (Dkt. 129 at 3.)

### B.      The Quality and Amount of Work Performed By Class Counsel

#### 1.      Pleadings and Motions

The record demonstrates that the Parties pursued their opposing positions comprehensively and zealously.  On August 25, 2014, Plaintiff Anamaria Chimeno-Buzzi filed her initial class action complaint.  (Dkt. 1.)  Plaintiff Lakedrick Reed filed his initial complaint on April 27, 2015 (Case No. 15-cv-21580-JEM (S.D. Fla.) (the "*Reed* Action")).  On May 20, 2015, Plaintiff Reed filed a Notice of Voluntary Dismissal without prejudice in the *Reed* Action, and on May 28, 2015, Plaintiff Chimeno-Buzzi filed an unopposed Motion for Leave to File a First Amended Complaint (Dkt. 92), which

---

[2]      The Net Settlement Fund – *i.e.,* the entire amount of the Settlement Fund, less costs associated with notice, settlement administration, attorneys' fees and expenses, and Plaintiff service awards (as approved by the Court) – shall be paid in full, *pro rata*, to Settlement Class Members who submit valid claims. (Settlement, Dkt. 126-1 at § IV.B.)

was granted by the Court on May 29, 2015 (Dkt. 93).  The First Amended Complaint, filed on May 29, 2015, included Plaintiff Reed as a proposed Class Representative.  (Dkt. 95.)

A Motion for Certification of the Class, along with supporting declarations, was filed on August 26, 2014.  On October 6, 2014, Defendants filed a Motion to Defer Briefing and Ruling on Plaintiff's Motion for Class Certification (Dkt. 21), and then on October 20, 2014 filed their initial Motion to Dismiss (Dkt. 22) and a Request for Judicial Notice in support (Dkt. 24).  An Opposition to the Motion to Dismiss was filed on November 7, 2014 (Dkt. 25), Defendants' Reply on November 17, 2014 (Dkt. 17), and a large number of pleadings and briefing relating to Notices of Supplemental Authorities, Responses and motion practice related thereto (Dkts. 28, 37, 38, 42, 53, 58, 63, 66, 67, 69, 70, 71, 89, 91, 94, 96, and 100).  Plaintiff also filed a Motion to Strike with respect to evidence submitted by Defendants in support of the Motion to Dismiss, which was fully briefed by the Parties (Dkts. 26, 30, and 31).  On June 15, 2015, Defendants renewed their Motion to Dismiss following the filing of the First Amended Complaint (Dkts. 108 and 109).

On October 27, 2014, following a Federal Rules of Civil Procedure, Rule ("Rule") 16 conference, the Parties filed a Rule 16 Scheduling Report, with competing proposed schedules for the litigation (Dkt. 24).  Thereafter the Court set a trial date in this Action for May 16, 2016, as well as various other deadlines and due dates (Dkt. 51).

On January 20, 2015, Defendants filed a Motion to Stay Discovery in the Action (Dkt. 34), which was fully briefed by the Parties (Dkts. 40 and 44).  Immediately following this Motion, on January 23, 2015, two separate Motions to Compel Discovery were filed against each of the Defendants (Dkts. 35 and 36), which were followed by a Motion to extend the briefing deadlines for the Motions to Compel, Oppositions, Replies, and a request to file a Sur-Reply (Dkts. 41, 43, 46, 47, 52, and 60). On April 9, 2015, the Court denied Defendants' Motion to Stay Discovery and granted the Motions to Compel (Dkt. 64).

Plaintiff also filed a Motion to Compel Defendants to File an Answer (Dkt. 49).  This Motion was extensively litigated and briefed by the Parties in a number of pleadings filed with the

Court relating to this and other discovery related motions (Dkts. 56, 61, 82, 83, 90, 97, 104, and 105).

Class Counsel also cooperated in organizing a leadership structure to effective and efficiently prosecute the claims on behalf of Plaintiffs and the proposed Class. On June 4, 2015, Plaintiffs filed an unopposed Motion to Appoint Interim Co-Lead Counsel (Dkt. 101).   On June 29, 2015, the Court issued an Order appointing the law firms of Carey Rodriguez Milian Gonya, LLP, Siprut PC, and Ahdoot & Wolfson, PC as interim class counsel, and Scott Owens, PA as liaison counsel (Dkt. 114).

On August 3, 2015, following a contentious but successful mediation, the Parties filed a Notice of Settlement (Dkt. 122).

## 2.     Discovery and Investigation

To support the Parties' hard-fought motion practice outlined above, this case necessitated extensive investigation and discovery.  Prior to the filings of the Complaints in this matter, all Plaintiffs' firms conducted substantial pre-filing investigation into the alleged wrongful conduct of Defendants, which included interviews with individuals subject to the robo-texts, the possibility of consent, and factual on-line and technological investigation.   (Declaration of Robert Ahdoot, attached hereto as Exhibit A ("Ahdoot Decl.") at ¶ 4.)

Following the commencement of litigation, on October 30, 2014, the Parties served initial disclosures pursuant to Rule 26(a)(1).   (*Id.* at ¶ 5.)   On November 26, 2014, the First Set of Interrogatories and First Requests for Production of Documents were served on Defendants.   (*Id.*) Plaintiffs also served two separate subpoenas to testify at deposition on Neustar, Inc., subpoenas for production of documents on HelloWorld and cellular telephone carriers, and noticed the depositions of a number of individuals affiliated with Defendants.   (*Id.*)   As described above, Plaintiffs also engaged in substantial discovery related motion practice motion practice, including prevailing on a number of Motions to Compel and Defendants' attempt to stay discovery. (*See e.g.* Dkts. 35, 36 41, 43, 46, 47, 52, 60 and 64).

Following the Court's granting of the Motions to Compel discovery, Defendants provided supplemental objections and responses to the Interrogatories and produced voluminous amounts of documents, ultimately producing nearly 20,000 pages of documents, all of which were carefully reviewed by Plaintiffs' Counsel. (Ahdoot Decl. at ¶ 6.)

3.      **Class Counsel Overcame Substantial Defenses and Hurdles to Achieve This Settlement**

Class Counsel expended substantial effort confronting serious litigation risks and achieving this Settlement on behalf of Class Members, especially given Defendants' wide range of potential defenses.

Throughout this litigation, until just before the Settlement was reached, the questions of whether a call or text sent to a reassigned (or "recycled") number constitutes a violation of the TCPA, and whether the Defendants' texting technology constituted an automatic telephone dialing system ("ATDS") under the TCPA and applicable FCC regulations and orders, were pending before the FCC. A negative decision on either issue would likely have eliminated Defendants' liability to the Class. It was only after nearly a year of litigation that the FCC decided these issues in its July 10, 2015 Order, interpreting the term ATDS broadly, and concluding that texts to reassigned numbers violate the TCPA. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (July 10, 2015).

Moreover, the Supreme Court granted certiorari in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 1892 (2015), in April of 2015, after roughly eight months of this litigation. The pendency of *Spokeo* – where the Supreme Court appears poised to decide whether a plaintiff seeking recovery of statutory damages in the absence of demonstrable harm lacks standing to sue in federal court— was of clear concern and posed substantial risks given the purely statutory damages being sought in this case. A broad decision in favor of the petitioners in *Spokeo* could have extinguished Plaintiffs' and the Settlement Class Members' Article III standing in federal court, leaving them without any recovery in this case.

Despite these significant hurdles and risks to recovery, Class Counsel proceeded to vigorously prosecute this case on the Class's behalf.

### 4. Settlement Negotiations

On July 22, 2015, while Defendants' Motion to Dismiss and Plaintiffs' Motion to Compel the Filing of an Answer were pending, the Parties participated in mediation before the Honorable Wayne R. Anderson (Ret.). (Ahdoot Decl. at ¶ 7.) Negotiations were contentious and the Parties were unable to reach the Settlement following a full day of mediation. (*Id.*) Thereafter, following a number of settlement discussions over the course of the next ten days, the Parties were able to reach a settlement in principal. (*Id.*) The Settlement is thus the product of lengthy and particularly difficult negotiations that took place over many hours and days.

After the parties reached a settlement in principal, the parties then began memorializing the full Settlement, which generated numerous additional rounds of comprehensive and often spirited negotiations. The parties extensively negotiated each aspect of the Settlement, including the Settlement Agreement (Dkt. 126-1) itself, the Supplement to the Settlement Agreement (Dkt. 127), and each of the eight exhibits and attachments filed with the Supplement (Dkts. 127-1, 128-1 to 128-7). For example, counsel negotiated and meticulously refined the notice program and each document comprising the notice (the Long Form Notice, Summary Notice, and Banner Ads), with the assistance of a class action notice expert, to ensure that the information disseminated to Class Members is clear and concise. (Ahdoot Decl. at ¶ 8.)

After the filing of the Supplemental materials, on December 18, 2015, the Court issued an Order (Dkt. 129) granting preliminary approval of the Settlement and conditionally certifying the Settlement Class set forth in the Settlement Agreement.

### 5. Class Counsel's Fee And Cost Request And Service Award Request

By way of this Motion, Class Counsel now seek an award of attorneys' fees and expenses of one-third (⅓) of the Settlement Fund in the amount of $3,333,333.33 and service awards to the named Plaintiffs of $5,000.00 each.

### III.    THE REQUESTED FEE AND COSTS AWARD IS REASONABLE

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011) (citing *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). Accordingly, awarding attorneys' fees to class counsel using the "percentage of recovery" method "is consistent with the dictates of the Eleventh Circuit." *Reyes, et al. v. AT&T Mobility Services, LLC*, No. 10-20837-CIV-MGC (S.D. Fla. June 21, 2013) (Cooke, J.) (Dkt. 196 at 6) (citing *Camden I*, 946 F.2d at 771; *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)). "The percentage applies to the total benefits provided, even where the actual payments to the class following a claims process is lower." *Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 WL 7184039, at *9 (S.D. Fla. Dec. 17, 2014).

In this case, one-third (⅓) of the Settlement Fund is an appropriate fee award, both as a percentage of the common Settlement Fund, and pursuant to the various *Johnson* factors that district courts of the Eleventh Circuit considering in confirming reasonableness.  *See Camden I*, 946 F.2d at 774-775.

#### A.    The Requested Fee Amount Is Reasonable As a Percentage of the Total Settlement

Although "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee," *In re Sunbeam: Securities Litigation*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774), an award of one-third (⅓) of the common fund is "consistent with the trend in this Circuit," *Reyes*, No. 10-20837-CIV-MGC (Dkt. 196 at 6).  Indeed, district courts of the Eleventh Circuit frequently approve fee awards of one-third (⅓) the common settlement fund. *See, e.g., Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming attorneys' fee award of 33.3% to class counsel, using 30% as starting benchmark).

Courts in this District regularly apply the market rate of one-third (⅓) of the common fund to TCPA settlements. *See, e.g., Soto v. The Gallup Organization, Inc.*, Case 0:13-cv-61747-MGC (S.D. Fla.) (Cooke, J.) (awarding fees of one-third (⅓) of the settlement fund in TCPA action); *Guarisma v. ADCAHB Medical Coverages, Inc., et al.*, 1:13-cv-21016, Doc. 95 (S.D. Fla. June 24, 2015) (awarding fees of one-third (⅓) of the settlement fund plus costs in TCPA action); *Espinal v. Burger King Corp.*, No. 09-20982 (S.D. Fla.) (Cooke, J.) (Dkt. 65) (same).   In *Soto*, for example, this Court recently approved a $4 million attorneys' fee award (one-third (⅓) of the $12 million common fund), *Soto*, Case 0:13-cv-61747-MGC (Dkt. 95), based on the following findings:

> (a) Class Counsel achieved a favorable result for the Class by obtaining Gallup's agreement to make significant funds available to Settlement Class Members, subject to submission of valid claims by eligible Settlement Class Members; (b) Class Counsel devoted substantial effort to pre- and post-filing investigation, legal analysis, and litigation; (c) Class Counsel prosecuted the Settlement Class's claims on a contingent fee basis, investing significant time and accumulating costs with no guarantee that they would receive compensation for their services or recover their expenses; (d) Class Counsel employed their knowledge of and experience with class action litigation in achieving a valuable settlement for the Settlement Class, in spite of Gallup's possible legal defenses and its experienced and capable counsel; (e) Class Counsel have standard contingent fee agreements with Plaintiffs, who have reviewed the Settlement Agreement and been informed of Class Counsel's fee request and have approved; and (f) the Notice informed Settlement Class Members of the amount and nature of Class Counsel's fee and cost request under the Settlement Agreement, Class Counsel filed and posted their Petition in time for Settlement Class Members to make a meaningful decision whether to object to the Class Counsel's fee request, and one (1) Settlement Class Member objected.

*Id.* at 8-9.

The same factors considered by this Court in *Soto* apply equally here and likewise weigh in favor of awarding Class Counsel attorneys' fees of one-third the Settlement Fund in this case.[3] The

---

[3]    In fact, the Settlement benefits afforded to the approximately 3.7 million Class Members in this case actually exceed the benefits to the 6.9 million members of the approved *Soto* settlement. Indeed, although the $10 million Settlement Fund in this case is 20% smaller than the *Soto* settlement fund, the number *Soto* class members was nearly double the number Class Members here. The result is a larger *pro rata* share for Class Members in this case.

Settlement negotiated by Class Counsel is significant, providing a $10 million Settlement Fund from which compensation will be provided to the Settlement Class Members who are allegedly entitled to redress under the TCPA. Class Counsel devoted substantial time investigating, analyzing and litigating the class claims by preparing and filing voluminous pleadings, briefs, and motions. Discovery was hard-fought, extensive, and involved several requests for information and documents, overcoming Defendants' numerous objections through successful motions to compel, ultimately resulting in the production and thorough review of over 20,000 pages of documents and additional voluminous electronic databases.  Settlement negotiations, though ultimately successful, were just as fractious.

The reasonableness of the requested fee award in this case is confirmed by the reasoning of the district court in *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015), a thorough opinion that analyzes dozens of TCPA class settlements throughout the country and concludes that, based on a risk adjusted fee structure, a fee award of 36% for the first $10 million of the common fund is reasonable in a TCPA case.  One-third (⅓) of the $10 million Settlement Fund in this case is well within the structure of reasonableness articulated by *In re Capital One.  Cf., e.g., Kolinek v. Walgreen Co.*, No. 13 C 4806, 2015 WL 7450759, at *17 (N.D. Ill. Nov. 23, 2015) (awarding 36% of the settlement as attorneys' fees).

Further bolstering this conclusion are the non-monetary benefits to the Settlement Class resulting from the Settlement's requirement that Defendants institute TCPA compliance training to their marketing employees, which will protect the Settlement Class from future unsolicited text messages.  *See, e.g., Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1244-1245 (11th Cir. 2011) (cost and fee award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class.").  Class Counsel seek no additional fees for obtaining this added benefit to the Class (which most TCPA settlements do not include).

In light of the exceptional monetary and non-monetary benefits obtained for the Settlement Class, Class Counsel respectfully request that the Court approve an attorneys' fees award of

$3,333,333.33, which would be consistent with the recent "trend in this Circuit" of awarding fees of one-third (⅓) the common fund to class counsel.  *See Reyes,* No. 10-20837-CIV (S.D. Fla.) (Dkt. 196).

**B.     The *Johnson* Factors Confirm the Reasonableness of the Requested Fee**

The reasonableness of Class Counsel's requested fee award is also confirmed by the various additional factors that district courts of the Eleventh Circuit may consider.

In cases where fees are sought in excess of 25%, the Eleventh Circuit instructs district courts to consider the factors articulated in *Johnson v. Georgia Highway Expr., Inc.,* 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of the requested fees.  *See Camden I,* 946 F.2d at 775. The "*Johnson* factors" are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.* at 772.

Each of these factors confirms the reasonableness of Class Counsel's requested fee award.

**1.     The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Fee Amount**

The first, fourth and seventh *Johnson* factors – the time and labor, preclusion of other employment, and time limitations imposed – each heavily support the reasonableness of Class Counsel's fee request.

As described above, from initiating this action in August 2014 until reaching the proposed Settlement in September 2015, Class Counsel was continuously engaged in vigorous litigation against well-capitalized Defendants represented by sophisticated counsel.  All told, Class Counsel expended 2,222.70 otherwise billable hours to this litigation and $23,319.13[5] in out-of-pocket expenses

---

[5]      *See* "Ahdoot Decl." at ¶¶ 9-10 (stating that his firm expended a total of 438.8 attorney hours and $4,378.63 in expenses and that Liaison Scott D. Owens expended 80 hours and $670 in expenses); Declaration of David P. Milian ("Milian Decl."), attached hereto as Exhibit "B", at ¶¶ 5-6

obtaining this Settlement[6] – an investment that Class Counsel made despite the risk and uncertainty presented by the litigation.

Specifically, Class Counsel performed the following tasks, without compensation, in order to achieve the exceptional result that constitutes the Settlement:

- Conducting extensive pre-filing and post-filing investigations, research, and legal analysis regarding Plaintiffs' claims and the claims of the Class;

- Preparing, filing and serving the Class Action Complaint;

- Moving for class certification and filing related briefing;

- Conferring with opposing counsel to prepare and file a Joint Scheduling Report;

- Preparing and serving initial disclosures on Defendants;

- Effectively opposing Defendant's motion to dismiss or to stay the litigation based on pending FCC petitions and the primary jurisdiction doctrine;

- Moving to strike materials attached to Defendants' motion to dismiss or to stay, and filing related briefing;

- Obtaining substantial class and merits focused discovery, including over 20,000 pages of documents and massive electronic databases, through the effective use of numerous interrogatories and requests for production, and thoroughly reviewing each page of these documents;

- Serving subpoenas for the production of documents and to testify at deposition on Neustar, Inc., HelloWorld and various cellular telephone carriers;

---

(stating that his firm expended a total of 1,148.9 attorney hours and $13,398.84 in expenses); Declaration of Joseph J. Siprut ("Siprut Decl."), attached hereto as Exhibit "C", at ¶¶ 9-14 (stating that his firm expended a total of 555 attorney hours and $4,871.66 in expenses).

[6]     The out of pocket costs, which are separate and apart from the cost of notice and administration, were expended for the benefit of the Settlement Class during the course of litigation and should be reimbursed in full.  *See* Fed. R. Civ. P. 23(h) (permitting counsel to petition for nontaxable costs); *see also Dowdell v. City of Apopka*, 698 F.2d 1181, 1191-92 (11th Cir. 1983) ("[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988.").

- Noticing the depositions of numerous individuals affiliated with Defendants, and filing motions to compel these individuals to appear for their depositions;

- Numerous telephonic conferences and written correspondence with Defendants' counsel concerning the nature and scope of discovery and the sufficiency of Defendants' discovery responses;

- Successfully moving to compel Defendants' production of discovery;

- Successfully opposing Defendants' motion to stay discovery;

- Moving to compel Defendants to answer the complaint, and filing related briefing;

- Filing numerous motions for leave to file sur-replies, accompanied by proposed sur-replies;

- Filing numerous notices of supplemental authority;

- Effectively coordinating the consolidation of the *Chimeno-Buzzi* action with the *Reed* action, and quickly reaching an agreement between Class Counsel's three law firms to jointly prosecute this action on behalf of the class;

- Successfully moving for leave to file an amended, consolidated complaint on behalf of Chimeno-Buzzi and Reed;

- Preparing an opposition to Defendants' renewed motion to dismiss or to stay the first amended class action complaint;

- Successfully moving for appointment of interim co-lead class counsel;

- Attending an eight-hour in-person mediation with a retired federal district judge; and

- Conducting extensive arm's length settlement negotiations that culminated in a comprehensive settlement agreement.

Additional attorney time will be devoted to this case following the filing of this Memorandum.  Counsel will need to file an application for final approval of the Settlement and in the event final approval is granted, additional service will be required including supervising aspects of the administration of the Settlement, answering Settlement Class Member questions, and helping resolve any issues that arise.

In sum, Class Counsel and their support staff have diverted, and will continue to divert, substantial time and resources to this matter that would otherwise have been spent on other cases. Class Counsel collectively devoted more than 2,000 attorney hours to the prosecution of this case. Accordingly, the amount of time and labor devoted to this case weighs in favor of finding Class Counsel's requested fee award reasonable.  *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) ("The expenditure of 1,000 billable hours – and often in significant blocks of time – necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.");  *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

### 2.    The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High

The second, sixth, and tenth *Johnson* factors – the novelty and difficulty of the questions, whether the fee is contingent, and the "undesirability" of the case – also support the requested fee award.

This case involved difficult and novel issues that presented a significant risk of nonpayment. For instance, the question of whether a call or text sent to a reassigned (or "recycled") number constitutes a violation of the TCPA – *i.e.*, where the previous (but not the current) subscriber consented to receive the call or text at issue – was still an undecided issue at the time Class Counsel initiated this action.  Also undecided at the outset of this action was whether the Defendants' texting technology constituted an automatic telephone dialing system ("ATDS") under the TCPA and applicable FCC regulations and orders.  It was only after nearly a year of litigation that the FCC decided these issues in its July 10, 2015 Order, interpreting the term ATDS broadly, and concluding that texts to reassigned numbers violate the TCPA.  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order (July 10, 2015).  Had the FCC ruled differently on either issue, the substantial time and resources invested by Class Counsel on behalf of the Settlement Class could

easily have been a total loss. Moreover, a broad decision in favor of the petitioners in *Spokeo* could have extinguished Plaintiffs' and the Settlement Class Members' Article III standing in federal court, leaving them without any recovery. Finally, because the TCPA does not provide for an award of attorneys' fees to a prevailing plaintiff, Class Counsel's recovery of costs and fees in this case has always been contingent on a successful outcome and substantial recovery, even with the favorable FCC rulings.

Such a substantial risk of nonpayment in return for advancing all of the costs and fees weighs heavily in favor of finding Class Counsel's requested award reasonable. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007) ("A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high."); *In re Checking Acc't Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("A contingency fee arrangement often justifies an increase in the award of attorney's fees."); *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007) ("Attorneys' risk is perhaps the foremost factor in determining an appropriate fee award.")

The difficult and contingent nature of this case described above also demonstrates its undesirability. There are few lawyers willing to invest significant time and resources prosecuting a lawsuit that involves complicated and uncertain legal questions and a substantial risk of receiving no compensation. Although Class Counsel managed to achieve an excellent result for the Settlement Class, this outcome was anything but certain until shortly before the Settlement was reached. As such, the "undesirability" of this case is a factor that weighs in favor of the reasonableness of the requested fee award. *See In re Checking Account Overdraft Litig*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight.") (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976)).

### 3.    Class Counsel Achieved an Excellent Result for the Settlement Class

The eighth *Johnson* factor focuses on the "monetary results achieved" for the Class. *See*

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1202 (S.D. Fla. 2006).

The Settlement Agreement provides an all-cash Settlement Fund of $10,000,000.00. Each Settlement Class Member who submits a valid claim form[7] will receive a *pro rata* share of the Net Settlement Fund, which Class Counsel expect will be well within the range of various other TCPA settlements that have been granted final approval. *See, e.g., In re Capital One*, 2015 WL 605203, at *5 (granting final approval to TCPA class action settlement where anticipated claimant recovery was $34.60); *Wilkins v. HSBC Bank Nevada, N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (granting final approval to TCPA class settlement where anticipated claimant recovery was $93.22); *Arthur v. Sallie Mae, Inc.*, No. 10-00198, 2012 WL 4075238, at *1 (W.D. Wash. Sept. 17, 2012) (granting final approval to TCPA class settlement where anticipated claimant recovery was "over $100 each"); *Bellows v. NCO Fin. Sys., Inc.*, No. 07-01413, 2008 WL 5458986, at *5 (S.D. Cal. Dec. 10, 2008) (recommending granting final approval to TCPA class settlement providing for claimant recovery of $70; approved at Dkt. 38).

Accordingly, this factor weighs heavily in favor of finding the requested fee award reasonable.

**4.     The Requested Fee is Consistent with Customary Fees Awarded in Similar Cases**

The fifth and twelfth *Johnson* factors – the customary fee, and awards in similar cases – also support approval.

As previously discussed, an award of attorneys' fees to class counsel of one-third (⅓) the common Settlement Fund is "consistent with the trend in this Circuit." *Reyes*, No. 10-20837-CIV-MGC (docket entry 196); *see, e.g., id.* at 6 (citing *Wolff*, 2012 WL 5290155, at *4 ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, Nos. 1:10– CV–00117, 1:11–CV–00029, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (class settlement

---

[7]     The number of actual claiming Settlement Class Members will be significantly less than 100%. *See Forcellati v. Hyland's, Inc.*, No. 12-1983, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("'[T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.'") (quoting *Ferrington v. McAfee, Inc.*, 2012 WL 1156399, at *4 (N.D. Cal. Apr. 6, 2012)).

approved with one-third of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08–CV–691–T–30TBM, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of common fund as attorneys fees); *Gutter v. E.I. DuPont De Nemours & Co.,* No. 1:95–cv–02152–ASG (S.D. Fla. May 30, 2003) (docket entry 626) (awarding class counsel one-third of the Settlement Fund as attorneys' fees); *In re Terazosin Hydrochloride Antitrust Litig.,* No. 1:99–md–01317–PAS, ECF No. 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding class counsel one-third of settlement fund)); *see also Waters*, 190 F.3d 1291 (Eleventh Circuit affirming fee award of 33 1/3% of common fund, using 30% as starting benchmark).

Moreover, courts in this District, including this very Court, have several times awarded attorneys' fees of one-third the settlement fund to class counsel in similar TCPA cases. S*ee, e.g., Soto*, Case 0:13-cv-61747-MGC (docket entry 95) (this Court awarding one-third to class counsel who obtained $12 million settlement to class of 6.9 million); *Guarisma*, 1:13-cv-21016 (docket entry 95) (awarding one-third plus costs in TCPA action); *Espinal*, No. 09-20982 (docket entry 65) (same).

Class Counsel's requested fee award of one-third (⅓) the Settlement Fund is thus entirely consistent with the customary percentage of the common fund awarded to class counsel in the Eleventh Circuit, and with fees awarded in similar TCPA settlements in this District. Accordingly, the fifth and twelfth factors weigh in favor of finding Class Counsel's requested award reasonable.

### 5.    This Case Required A High Level of Skill

The remaining *Johnson* factors – the skill required to perform the legal services properly and the experience, reputation, and ability of the attorneys – confirm that the fees sought are reasonable.

As shown above, Class Counsel achieved a settlement that confers substantial monetary benefits to the Settlement Class Members despite the hard fought litigation against sophisticated and well-financed Defendants represented by top-tier counsel. *See In re Sunbeam Sec. Litig.,* 176 F. Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced.").

This outstanding result was made possible by Class Counsel's extensive experience litigating

class actions of similar size, scope, and complexity to the instant action.  For many years, Class Counsel has litigated complex matters involving consumer issues, including TCPA actions, and all have been class counsel in other consumer class action cases.  *See generally* Exhibit A, Ahdoot Decl.; Exhibit B, Milian Decl.; Exhibit C, Siprut Decl.

Each of the *Johnson* factors confirms the reasonableness of the requested fee award. Accordingly, Class Counsel respectfully request that the Court approve an attorneys' fees award of $3,333,333.33, one-third of the Settlement Fund.

## IV.   THE REQUESTED SERVICE AWARDS ARE REASONABLE.

Finally, Class Counsel respectfully request that the Court award modest service awards to each of the two named Plaintiffs.  Such awards are routinely approved by Courts in order to compensate named plaintiffs for their work on behalf of the class; to account for financial, personal, or reputational risks associated with litigation; and to encourage plaintiffs to step forward on behalf of unnamed class members in the future.  *See Allapattah*, 454 F. Supp. 2d at 1218-19; *see also, e.g.*, *Schulte*, 805 F. Supp. 2d at 601-02 ("Class Representative's willingness to publically place their names on this suit and open themselves up to scrutiny and attention is certainly worth some remuneration.").

In this case, the requested service awards of $5,000.00 for each of the two named Plaintiffs, neither of whom have ever before served as a plaintiff in a class action, are well justified and reasonable.  In addition to lending their names to this matter, and thus subjecting themselves to significant public attention, Plaintiffs were actively engaged in this action.  Among other things, they (1) provided information, including cellular telephone records and screenshots of their cellular telephones, to Class Counsel for preparing the complaints and other filings;  (2) reviewed pleadings and filings;  (3) communicated on a regular basis with Class Counsel to stay apprised of the progress of the litigation and settlement negotiations; and (4) reviewed and approved the Settlement Agreement.  (Exhibit A, Ahdoot Decl. at ¶ 19.)  Their dedication to this case is notable, particularly given the relatively small size of their personal financial stake.

The amount requested here, $5,000.00 for each named Plaintiff, is substantially less than

amounts frequently approved by federal courts in TCPA actions and other class cases.  *See, e.g., Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. 201) (awarding $20,000 incentive award in TCPA class settlement);  *Desai v. ADT Security Servs., Inc.*, No. 11-1925 (N.D. Ill. Feb. 27, 2013) (Dkt. 243) (awarding $30,000 incentive awards in TCPA class settlement);  *see also Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006) (collecting cases);  *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two incentive awards of $55,000 and three incentive awards of $35,000);  *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding incentive awards of $20,000 to each of two plaintiffs).

Accordingly, Class Counsel respectfully request that the Court approve service awards of $5,000.00 each to Plaintiffs Anamaria Chimeno-Buzzi and Lakedrick Reed.

## V.     CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court:  (1) award attorneys' fees and expenses to Class Counsel in the amount of $3,333,333.33 (*i.e.*, one-third (⅓) of the $10 million Settlement Fund); and (2) award service awards of $5,000.00 each to Plaintiffs Anamaria Chimeno-Buzzi and Lakedrick Reed.

### CERTIFICATE PURSUANT TO LOCAL RULE 7.1

Prior to filing the instant Motion, Plaintiffs' undersigned counsel avers he conferred with Defendant's counsel pursuant to Local Rule 7.1 and undersigned counsel does not believe that Defendants will oppose the relief sought in this motion.

Dated:  February 15, 2016              Respectfully submitted,

                                       By: /s/ David P. Milian
                                       David P. Milian
                                       *dmilian@careyrodriguez.com*
                                       Frank S. Hedin
                                       *fhedin@careyrodriguez.com*
                                       **CAREY RODRIGUEZ
                                       MILIAN GONYA, LLP**
                                       1395 Brickell Avenue, Suite 700
                                       Miami, Florida 33131
                                       Telephone: (305) 372-7474

Facsimile: (305) 372-7475

Robert Ahdoot*
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310.474.9111
Fax: 310.474.8585

Joseph J. Siprut*
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260

*Counsel for Plaintiffs and the
Proposed Settlement Class*

Scott D. Owens
*scott@scottdowens.com*
Patrick C. Crotty
*patrick@scottdowens.com*
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954.589.0588
Fax: 954.337.0666

*Liaison Counsel*

*\*Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 15, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Notice of Electronic Filing generated by CM/ECF.

<u>/s/David P. Milian</u>

-20-