UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

ANAMARIA CHIMENO-BUZZI, and
LAKEDRICK REED, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.

HOLLISTER CO., and AMBERCROMBIE
& FITCH CO.,

        Defendants.
_____/

CASE NO.: 14-cv-23120-MGC

Hon. Marcia G. Cooke, Presiding

Hon. Magistrate Edwin G. Torres

## OBJECTION BY CLASS MEMBER MOLLY O'KEEFE
## TO CLASS SETTLEMENT (Dkt. No. 126-1 ) and MOTION FOR APPROVAL
## OF ATTORNEY FEES (Dkt. No. 130)

Class Member Molly O'Keefe whose Declaration is attached hereto as Exhibit 1 hereby submits her objection to the class settlement and to the motion for approval of class counsel's attorney fees as follows:

Federal courts approve class action settlements only when they are found to be fair, reasonable and adequate. *In re "Agent Orange" Prod. Liability Litig.,* 597 F.Supp. 740, 761 (E.D.N.Y.1984), *aff'd,* 818 F.2d 145 (2d Cir.1987), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 647 (1988). "Fairness, reasonableness and adequacy must be judged in light of the 'totality of the circumstances.' " *Grunin v. International House of Pancakes,* 513 F.2d 114, 124 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975)). A number of factors guide district courts in determining whether a settlement of a class action seeking money damages is fair, reasonable and adequate. These factors include: (1) the complexity, expense and probable duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of

the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action at trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the reasonableness of the settlement fund in the light of the attendant risks of litigation. *County of Suffolk v. LILCO*, 907 F.2d 1295, 1323–24 (2d Cir.1990). Additional related factors should also be weighed in determining a settlement's fairness: (10) a court must examine the proposed settlement as a fiduciary of absent class members to ensure that the settlement does not unfairly compromise their rights. *LILCO*, 710 F.Supp. at 1437; it must examine the negotiations that produced the proposed settlement to ensure that the interests of all class members were adequately considered. *In re "Agent Orange" Product Liability Litig.*, 597 F.Supp. at 762. As one Court of Appeals has stated: "In approving the proposed settlement of a class action, a district court has the fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately." *In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir.1986). (11) The court should also consider the public interest in the settlement. *County of Suffolk v. LILCO*, 710 F.Supp. 1407, 1436 (E.D.N.Y.1989), *aff'd*, 907 F.2d 1295 (2d Cir.1990).

## OBJECTIONS

### I.     Claims Procedure

The claims-made nature of the settlement is unnecessary for Class Members that the Settlement Administrator has a current address for. For those Class Members, the Parties have all of the information necessary to pay them directly (excluding those that opt-out); however, the settlement requires all Class Members to submit a Claim Form. As a result, only a small

percentage of Class Members, since the response rate is typically 5 to 8% will receive a settlement benefit in exchange for a full release of claims. In a case like this, where the Parties and the Settlement Administrator have the necessary information to process settlement checks, a claims-made settlement process is unnecessary and unreasonable for those Class Members. The predictable low claims rate demonstrates that the process is unfair. The Defendants and Claims Administrator already know who the class members are, the settlement states that their addresses have already been reversed engineered from the telephone numbers which Defendants already had, and Defendants know who they texted. Sending a mailed notice and requiring class members to respond in writing is a waste of time and resources. The Parties should mail a settlement check directly to each Class Member with a current address (just as they already have with the notice), thereby cutting administration costs and ensuring that the settlement benefited more than a small minority of the Class.

## II. Overbroad Release

The Settlement Release is overbroad and unfair to the Class. See definitions of "Release" and "Released Claims" on pages 8-9 of the Settlement Dkt. 126-1:

> DD. "Release" means the release and discharge, as of the Effective Date, by Plaintiffs and all Settlement Class Members (and their respective present, former and future administrators, agents, assigns, attorneys, executors, heirs, partners, predecessors-in-interest and successors), who have not excluded themselves from the Settlement Class, of the Released Persons and shall include the agreement and commitment by Plaintiffs and all Settlement Class Members to not now or hereafter initiate, maintain or assert against the Released Persons or any of them any and all causes of action, claims, rights, demands, actions, claims for damages, equitable, legal and/or administrative relief, interest, demands or rights, including without limitation, claims for damages **of any kind**, including those in excess of actual damages, whether based on federal, **state or local law**, statute, ordinance, regulation, contract, **common law** or any other sources that have been, could have been, may be or could be alleged or asserted now **or in the future** by Plaintiffs or

any Settlement Class Members against the Released Persons, or any of them, in the Litigation or in any other court action or before any **administrative body** (including any regulatory entity or organization), tribunal, arbitration panel or other adjudicating body arising out of or related to the Released Claims.

EE. "Released Claims" means any and all claims, actions, causes of action, rights, demands, suits, debts, liens, contracts, agreements, offsets or liabilities, including but not limited to **tort claims, negligence claims, claims for breach of contract, breach of the duty of good faith and fair dealing**, breach of statutory duties, actual or **constructive fraud, misrepresentations, fraudulent inducement, statutory and consumer fraud, breach of fiduciary duty, unfair business or trade practices, false advertising, restitution, rescission**, compensatory and punitive damages, injunctive or declaratory relief, attorneys' fees, interests, costs, penalties and any other claims, whether known or unknown, alleged or not alleged in the Litigation, suspected or unsuspected, contingent or matured, under federal, state or local law, which Plaintiffs and/or any Settlement Class Member had, now have or may in the future have with respect to any conduct, act, omissions, facts, matters, transactions or oral or written statements or occurrences **on or prior to the Preliminary Approval Date** arising from or relating to allegedly unauthorized text or other messages or phone calls by the Released Persons to the Releasing Persons, including, without limitation, the causes of action and allegations made by Plaintiffs in the Litigation as well as claims and allegations that the Released Persons violated the TCPA or any similar claims under the **consumer protection and/or deceptive trade practices acts and common law of any state** or the District of Columbia. (Bold added high light portions Objector considers to be overbroad)

As written, the Release extends beyond the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA") and includes under any statute or theory. There is no evidence that Class Members are receiving additional compensation for such an expansive Release. The Court should specifically limit the Release to claims under the TCPA during the Class Period. The settlement did not result in any injunctive relief or change in defendants' business practices, therefore, if the Defendants sent text messages or used a pre-recorded

message to call Class Members and the public after the date of filing of the Complaint in this action then this Release should not prevent another class action lawsuit.

### III. The Settlement Amount is Inadequate

The proposed settlement cannot be judged without reference to the strength of plaintiffs' claims. The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement. *City of Detroit v Grinnell Corp*, 495 F2d 448, 455 (CA 2 1974); *Protective Committee v. Anderson*, 390 U.S. 414, 88 S.Ct 1157, 20 L.Ed.2d 1 (1968). The main question in approving a class settlement is whether the settlement is fair in light of "plaintiff's likelihood of success on the merits." *Intl Union, United Auto, Aerospace, & Agr Implement Workers of Am v Gen Motors Corp*, 497 F3d 615, 631 (CA 6 2007).

Here, we have a settlement that would pay each of the potential 3.77 million claimants less than three dollars if each submitted a claim, or less than $35.00 if only 5% submit a claim. Yet each class member has a claim worth at least $500.00 under the statutes sued upon, which is a total of $1,889,232,500. At a 5% claim rate the settlement would pay claimants about 7% of what they might receive if they opt out on non-willful one time violation of $500 or 2.3% of what they would receive for one willful $1500 violation. As a whole, the settlement would at most pay out 0.035% of the potential recovery for the class assuming one non-willful text message per class member. Thus if this settlement goes through, the class is walking away and leaving 99.965% of the potential $1.8 billion in damages on the table. Considering that these are strict liability statutory violations and now the FCC has decided the term ATDS broadly and in the class's favor (see. Pg. 5 of Memorandum in Support of Attorney Fees Dkt. No. 130) the risks of proceeding are greatly reduced and the likelihood of success on the merits much greater.

Consequently, denying the current settlement and sending the parties back to mediation to work out a revised class settlement fund is eminently reasonable. See e.g. *Cullan & Cullan LLC v M-Qube, Inc,* No. 8:13CV172, 2014 WL 347034, at *9 (D Neb January 30, 2014) sustaining an objection to a class actions settlement finding, ["The intervenors contend that over $225 million in fraudulent charges is at issue. The parties concede that there are at least hundreds of thousands, if not millions, of people in the potential class. A settlement fund of $6 to $6.5 million seems inadequate in the face of alleged losses of such magnitude."]

### IV.   The Proposed Fee Award Is Excessive & Depletes the Settlement Fund

O'Keefe also objects on the basis that the fees requested by class counsels are unreasonable and excessive and deplete the overall amount available for distribution to the claimants, and should be reduced. The court often offers the only protection for fund beneficiaries. As a result, it is generally agreed that courts have not only authority but also responsibility to review fee requests *sua sponte* in common fund cases—*see, e.g., In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 573 (7th Cir. 1992)—and several courts have said that fee requests from common funds are subject to heightened judicial scrutiny. *See, e.g., Skelton v. General Motors,* 860 F.2d 250, 253 (7th Cir. 1988), *cert. denied,* 493 U.S. 810 (1989); *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 583 (3d Cir. 1984). "The percentage method imposes a fiduciary responsibility on the court when awarding attorney fees because often persons with small individual stakes will not file objections and the defendant who created the fund has little interest in how the fund is allocated between the class and class counsel." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 364 F.Supp.2d 980, 992 (D.Minn.2005).

The following chart, based on information stated in the affidavits of class counsels summarizes the hours claimed and the effective hourly rate at various contingency percentages:

| Counsel | Total Hours Claimed | Objector's suggested Fee at $700 per hour | Effective Hourly Based on 33.3% contingency ($3,333,333) | Effective Hourly Based on 25% contingency ($2,500,000) | Effective Hourly Based on 20% contingency ($2,000,000) |
|---|---|---|---|---|---|
| Ahdoot | 439 | $307,300 | $1498.80 | $1124.10 | $899.28 |
| Owens | 80 | $56,000 | $1498.80 | $1124.10 | $899.28 |
| Milian | 1150 | $805,000 | $1498.80 | $1124.10 | $899.28 |
| Siprut | 555 | $388,500 | $1498.80 | $1124.10 | $899.28 |
| Totals | 2224 | $1,556,800 | | | |

Interestingly, none of the counsels mentions their typical hourly rate in any of their declarations even though some of the attorneys such as Joseph Siprut have recent experience in defensive litigation which must have been billed hourly. Therefore, this Objector suggests an hourly rate of $700.00, which is much higher than what has been found to be a reasonably hourly rate for the Miami-Dade[1] area in the past few years. See e.g. *Breslow v Am Sec Ins Co*, No. 14-62834-CIV, 2016 WL 698124, at *11 (SD Fla February 19, 2016) [$300-per-hour rate], *Parets v Unitedlex Corp*, No. 1:15-CV-24026-KMM, 2016 WL 614569, at *2 (SD Fla February 16, 2016) [the Court finds the following rates to be reasonable: (1) $325 partner rate; (2) $195 associate rate; (3) $75 staff rate], *Oravec v Sunny Isles Luxury Ventures LC*, No. 04-22780-CIV, 2010 WL 1302914, at *10 (SD Fla March 31, 2010) [hourly rates of $350 to $425 for senior attorneys are reasonable], *Luken v Intl Yacht Council Ltd*, No. 02-60772-CIV, 2009 WL 1706534, at *16 (SD

---

[1] The "relevant market" for purposes of determining the reasonable hourly attorney rate is "the place where the case is filed," *American Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir.1999).

Fla June 11, 2009) [hourly rate of $300 reasonable and appropriate], *Burrows v Purchasing Power, LLC*, No. 1: 12-CV-22800, 2013 WL 10167232, at *9 (SD Fla October 7, 2013)[approving hourly rates of $325 to $650 in a class action settlement].

According to the affidavits of class counsels, the above total of hours also include a substantial number of hours for future work related to the settlement. Although counsels provided lengthy declarations no actual time records were included as exhibits, nor was there any summary of how time records were kept, or what software was used or even whether the time records were reviewed to prepare the declarations. Thus there is no foundation for the hours claimed in the hearsay affidavits as the affiants are testifying from some record they kept of their hours which has not been provided to the court. Notably, the three declarations all contain the same twenty-two identical bullet points of what each counsel did to justify the fee they are seeking yet. Presumably, all three firms did not do the exact same things in the case or their hours billed would all be the same, but one cannot tell from reading the declarations.

Class Counsel have done an excellent job of bringing the action but after only six months of discovery and without taking depositions, they immediately transitioned into a mediation phase and essentially had the case resolved within a year. Objector does not doubt that class counsels are highly experienced in their field, but if the fee is approved without revisions, then Class Counsel will be receiving payment for every hour claimed, without any real oversight or review of their actual time records. More troubling is that Class Counsel are seeking 33.3% of this low settlement which clocks out at the incredible hourly rate of $1498.80 ($3,333,333 / 2224)! This is excessive and not reasonable in relation to the risk or the result obtained. See e.g. *Freeman v Clarke Co*, No. 4:08-CV-139-HTW-LRA, 2012 WL 6569378, at *17 (SD Miss December 16, 2012) aff'd 620 Fed Appx 223 (CA 5 2015) finding that a contingency fee that

would result in counsel receiving the equivalent of $1,150 per hour was excessive. Class Counsel represent themselves to by very experienced TCPA litigators but the speed with which this case was resolved for a tiny class benefit gives the impression that the entire case was designed to get the maximum fee for the minimum effort.

At least one circuit has stated that the benchmark in class action cases is 25%.[2] See *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990). Other courts have declined to adopt 25% standard contingency fee, finding it too high. See *In re Guidant Corp Implantable Defibrillators Products Liab Litig,* No. MDL 05-1708 DWF/AJB, 2008 WL 682174, at *6 (D Minn March 7, 2008) ["the Court notes its distaste for the establishment of a 25% benchmark as the starting basis for an award of attorney fees in common fund cases. The Court finds that a 25% benchmark would be completely arbitrary and would not take into consideration the varying circumstances and contours of every case."]; *Zilhaver v UnitedHealth Group, Inc,* 646 F Supp 2d 1075 (D Minn 2009) [Reasonable attorney fees award was 14%, rather than requested 23.5% of $17 million settlement was substantial sum, where counsel worked over 5,618 hours in three years of litigation against formidable opponents.][3]

Courts have discretion to use whatever percentage arrangements may prove just or workable in a particular case. Federal Judicial Center, *Awarding Attorneys' Fees and Managing*

---

[2] *See also,* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and their Fee Awards,* 7 J. Empirical Legal Stud. 811 (2010) (analyzing 688 class action settlements in 2006 and 2007 and finding a mean of 25% and a median of 25.4% for the award of attorneys' fees).

[3] *See also In re Dreyfus Aggressive Growth Mut. Fund. Litig.,* 2001 WL 709262 at *1, 2001 U.S. Dist. LEXIS 8418 at *2 (S.D. NY 2001) (awarding fees amounting to 15% of the common fund where 30% constituted the "far end" of reasonableness); *In re Fine Host Corp. Sec. Litig.,* No. 3:97–CV–2619, 2000 WL 33116538, at 5*, 2000 U.S. Dist. LEXIS 19367, at *17 (D.Conn. Nov. 8, 2000) (awarding 17.5% of the class common fund).

*Fee Litigation*, at 69 (2d ed.2005). The District Court in *Guidant* ultimately decided "that a 15% set-aside for common benefit attorney fees is justified." *In Re Guidant*, supra at *14.

In determining an appropriate percentage the Eleventh Circuit has said that the district court "should articulate specific reasons for selecting the percentage upon which the attorneys' fee award is based. . . . [It] should identify all factors upon which it relied and explain how each factor affected its selection of the percentage." *Camden I Condominium Ass'ns v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). Even though a class counsel may have done excellent work and met all of the requirements under *Johnson*, a fee award can still be reduced where, as here, the benefit to the individual claim members would be very small. See *In re Rio Hair Naturalizer Products Liab Litig*, No. MDL 1055, 1996 WL 780512, at *18 (ED Mich December 20, 1996) ["The reduction in the fees is made solely based upon the Court's belief that given the very limited amount of the fund that the individual claimants will receive, it cannot in good conscience award Petitioners any more than twenty percent of the fund."]

Class Counsel indicate that they have expended approximately $23,319. No records for costs were provided so it is not clear what the costs were spent on. The Class has no assurance Class Counsel economized its own expenses. Class Counsel is requesting millions of dollars for its work, surely it can absorb $23,319 in out of pocket expenses in exchange for such a windfall. There were no depositions taken nor any experts hired so the costs could not be for court reporters, transcript fees, or expert retainers. Counsel deserve credit for their frugality as this amount is probably less than what might be incurred in costs for a single plaintiff medical malpractice case. Spread over three different law firms the risk of costs taken by each class counsel is less than $7773.00 each. Put a different way, class counsel are seeking approval for a return 138 times greater than the $23,319 they have invested so far.

In regards to the result obtained, Class Counsel have obtained a settlement that would pay each of the potential 3.77 million claimants less than three dollars if each submitted a claim, or less than $35.00[4] if only 5% submit a claim. Yet each class member has a claim worth at least $500.00 under the statutes sued upon[5], which is a total of $1,889,232,500. Thus if this settlement goes through, the class is walking away and leaving over $1.8 billion in damages on the table.

The settlement does nothing to deter future violations, and it certainly cannot have the same deterrent effect as actually prosecuting these claims to judgment. Class Counsels point out that they have prosecuted many similar claims, also to a settlement, which apparently have had no significant deterrent effect as the violations continue to occur as demonstrated by 3.7 million mass violations as recently that occurred to the claim members in this case.

Based upon the above analysis, O'Keefe suggests that a more reasonable fee would be 20% which is still $2,000,0000 of the total settlement (assuming that the settlement not rejected for the reasons stated above) and also $443,200 more than a reasonably hourly rate of $700 would end up paying Class Counsel ($700 X 2224= $1,556,800). This would mean that Class Counsel would receive an effective hourly rate of $899.28; hardly unreasonable. The Court also should deny Class Counsel's expense request; more than $2 million sufficiently compensates Class Counsel for its work and incentivizes future litigation.

The above resolution would put $1,333,333 back into the settlement for distribution to the claimants and increase the payout per claim (assuming a 5% claim rate) to about $42.00 per

---

[4] Administrative fees will still have to be deducted for the claims administrator, and the settlement is somewhat vague on what those are expected to be.

[5] According to the amended complaint, lead plaintiff's claim is worth at least $9500.00 for the nineteen separate text messages she received. If only a small percentage of class members received a similar number of unauthorized messages then the total potential damages increase exponentially.

claim, still low, but a substantial improvement over the likely current distribution.

In summary the objection should be granted, and the settlement denied/revised as the notice and claim procedures are unnecessary, the overall amount is too low, the release language too broad, and the attorney fees to high. If this Court agrees and upholds this objection, then counsels for O'Keefe respectfully requests an award of attorney fees to be determined using either the effective hourly rate ultimately obtained by class counsel multiplied by the time spent on the matter or the final court approved contingency percentage multiplied by the increase in benefit to the class as result of the objection, for benefiting the class as a whole and increasing the distribution to the class. *See e.g. Manual for Complex Litigation (Fourth)* § 21.643 (2004) ("An objector who wins changes in the settlement that benefit the class may be entitled to attorney fees, either under a fee-shifting statute or under the 'common-fund' theory.").

Respectfully Submitted

Dated: February 29, 2016

/s/ Scott Mancinelli
Scott Mancinelli
Mich Bar No. 60148 & Cal. Bar No. 171858
Attorney for Class Member Molly O'Keefe
Pro Hac Vice application pending
156 West Washington Avenue
Zeeland, MI 49464
Telephone: 616-772-5221
Facsimile: 616-772-1181
Email: scottm@hvplaw.com

Dated: February 29, 2016

Ryan D. Gesten, Esq.
Florida Bar No. 240760
Attorney for Class Member Molly O'Keefe
Rogers Morris & Ziegler, LLP
1401 E. Broward Boulevard, Ste.300
Fort Lauderdale, FL 33301-2116
Email: rdgesten@rmzlaw.com
Telephone: (954) 462-1431
Facsimile: 954-763-2692

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 29, 2016 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties, if any, who are not authorized to receive electronically Notices of Electronic Filing.

Ryan D. Gesten
Florida Bar No. 240760

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

ANAMARIA CHIMENO-BUZZI, and
LAKEDRICK REED, on behalf of themselves
and all others similarly situated,

Plaintiffs,

v.

HOLLISTER CO., and AMBERCROMBIE &
FITCH CO.,

Defendants.

Case No. 14-cv-23120-MGC

Hon. Marcia G. Cooke, Presiding

Hon. Magistrate Edwin G. Torres

## DECLARATION OF MOLLY O'KEEFE

1. I, Molly O'Keefe, hereby declare and state under penalty of perjury the following:

2. I make this declaration of my own personal knowledge and if called to testify at hearing or trial I could and would state truthfully the following.

3. I am over the age of 18, citizen of the United States and a resident of the state of Michigan, and my address is 4619 Castle Court, Holland, MI 49423. My phone number is 6162127202.

4. I have had a cell phone since at least 2013 which has been capable of sending and receiving text messages.

5. I am familiar with Hollister Co. and Abercrombie & Fitch Co. and have in the past received unsolicited advertising text messages from them and thus am a member of the settlement class in this action. A summary of my objection to the settlement is being submitted by my counsel in conjunction with this Declaration.

6. I intend to appear at the fairness hearing through counsel, who is listed on my Objection to the settlement.

Dated: February 25, 2016

_____
Molly O'Keefe