UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

| | |
|---|---|
| ANAMARIA CHIMENO-BUZZI, and LAKEDRICK REED, on behalf of themselves and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )   Case No. 14-cv-23120-MGC<br>)<br>)   Hon. Marcia G. Cooke, Presiding |
| v. | )<br>)   Hon. Magistrate Edwin G. Torres<br>) |
| HOLLISTER CO., and ABERCROMBIE & FITCH CO., | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**PLAINITIFFS' RESPONSE IN OPPOSITION TO THE
<u>OBJECTIONS OF MOLLY O'KEEFE AND PATRICK S. SWEENEY</u>**

Plaintiffs Anamaria Chimeno-Buzzi and Lakedrick Reed submit this response in opposition to the objections to the settlement agreement and the motion for attorneys' fees (the "Objections") (D.E. 134, 136) filed by Molly O'Keefe and Patrick S. Sweeney.[1]

## I.   INTRODUCTION

The Objections are procedurally improper, boilerplate, and wholly without merit. They should be overruled in their entirety.

The Objections are brought by two "serial" or "professional" objectors (Mr. Sweeney and Ms. O'Keefe's attorney, Scott Mancinelli), who repeatedly object to class settlements in the hopes of extracting a fee from the litigants. Mr. Sweeney has recently objected to numerous class action settlements with the same boilerplate objections he asserts here.[2] With respect to Ms. O'Keefe, her counsel, Mr. Mancinelli, also recently represented her mother, Amy O'Keefe, in objecting to another TCPA settlement in the Southern District of California.[3] Ms. O'Keefe's Objection in this case is comprised entirely of arguments copied-and-pasted almost verbatim from Amy O'Keefe's objections to the *Couser* settlement, which were voluntarily withdrawn.[4]

Against this backdrop, it comes as no surprise that the Objections in this case are both procedurally defective and substantively baseless. Procedurally, the Objections should be summarily denied because they fail to comply with the Court's specific requirements for the filing of objections, as set forth in the Court's Order granting preliminary approval (D.E. 129) and in the Court-approved Class Notice (D.E. 128-7).

Substantively, the Objections are entirely without merit. First, Mr. Sweeney is not a

---

[1]   Unless otherwise defined herein, all capitalized terms shall have the same force, meaning and effect as ascribed in the Settlement Agreement, filed on September 10, 2015 (D.E. 126-1.)

[2]   *See In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196, (N.D. Ohio Nov. 17, 2015) (Obj. of Patrick Sweeney (ECF No. 1968)); *see also Roberts v. Electrolux Home Prods., Inc.*, 2014 WL 4568632, at *12-15 (C.D. Cal. Sep. 11, 2014) (overruling Patrick Sweeney's objections and noting his "long history of representing objectors"); *Larson v. Trader Joe's Co.*, 2014 WL 3404531, at *6-7 & n.4 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings").

[3]   *See Couser v. Comenity Bank*, Case No. 12-CV-02484-MMA-BGS (S.D. Cal.) (D.E. 70-71, 73, 80) (a copy of Amy O'Keefe's objection to the *Couser* settlement, and a copy of class member Anne Card's objection to the *Couser* settlement, in which Amy O'Keefe joined, are attached hereto as Composite Exhibit "A").

[4]   Contemporaneously with the filing of this opposition brief, Plaintiffs are filing a motion for leave to take videotaped depositions of both Ms. O'Keefe and Mr. Sweeney. (D.E. 137.)

1

Settlement Class Member and thus does not have standing to object to the Settlement (Plaintiffs are seeking discovery from Ms. O'Keefe to determine, *inter alia*, whether she is indeed a Settlement Class Member). Second, the Objections ignore a long line of controlling Eleventh Circuit authority that confirms the adequacy of the relief provided by the $10 million Settlement Fund, the appropriateness of the Settlement's claim procedure and release provision, and the reasonableness of Class Counsel's requested fee award. Ms. O'Keefe and Mr. Sweeney ought to be aware of these controlling legal authorities, yet fail to acknowledge them in their Objections. Instead, Ms. O'Keefe urges the Court to reject the entire Settlement pursuant to a handful of inapposite and non-binding decisions from other circuits. Mr. Sweeney seeks the same outcome, but without citing a single case. And neither Ms. O'Keefe nor Mr. Sweeney submit any evidence in support of their characterizations of the Settlement.

Despite the overwhelming vote of support from the Class – to date there have been well over 80,000 claims from Class Members, and claims continue to increase at a steady pace – two serial objectors now seek to deny relief to the entire Class with meritless objections supported by no legal authority or evidence.[5]

Such obstructionist tactics should not be tolerated. The Court should summarily overrule both Objections.

**II. ARGUMENT**

The Objections are procedurally improper and substantively baseless, having been filed for the sole purpose of extorting Class Counsel.

**A. THE OBJECTIONS ARE PROCEDURALLY IMPROPER.**

The Objections should be summarily dismissed for failure to comply with the procedural requirements imposed by the Court in its Order granting preliminary approval and in the Court-approved Class Notice.

The Court's Order granting preliminary approval states, in pertinent part:

> No member of the Settlement Class shall be entitled to be

---

[5] In a settlement of this magnitude, which establishes a $10 million Settlement Fund, the Court should expect to receive around 47 objections to the Settlement (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1550 (2004). Thus, the fact that Ms. O'Keefe and Mr. Sweeney are the only objectors out of 3.7 million Settlement Class Members (and Mr. Sweeney is not even a Settlement Class Member, as discussed below) serves as further confirmation that the Settlement is perfectly reasonable and that the Objections are baseless. *See Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (such a "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval.").

> heard at the Fairness Hearing (whether individually or through separate counsel) or to object to the Settlement, and no written objections or briefs submitted by any member of the Settlement Class shall be received or considered by the Court at the Fairness Hearing, unless written notice of the objecting Settlement Class Member's intention to appear at the Fairness Hearing and copies of any written objections and/or briefs shall have been filed with the Court pursuant to the Court's CM/ECF system (or any other method in which the Court will accept filings, if any) and served on the Settlement Administrator, Class Counsel, and Defense Counsel on or before forty-five (45) days after the Notice Date. Objections that are mailed to the Court (and not filed pursuant to the Court's CM/ECF system, or any other method in which the Court will accept filings, if any), or objections that are served on the Parties but not filed with the Court, shall not be received or considered by the Court at the Fairness Hearing.

(D.E. 129 at 9.)

The Court's Order granting preliminary approval also approved the Class Notice, displayed in pertinent part below:

## OBJECTING TO THE SETTLEMENT

**17. How do I tell the Court if I do not like the Settlement?**

If you are a Settlement Class Member (and do not exclude yourself from the Settlement Class), you can object to any part of the Settlement. To object, you must submit a letter or other written document that includes the following:

1) A heading that includes the case name and case number, *Anamaria Chimeno-Buzzi & Lakedrick Reed v. Hollister Co. & Abercrombie & Fitch Co.*, Case No. 14-cv-23120-MGC;

2) Your name, address, telephone number, and if represented by counsel, the name, bar number, address, and telephone number of your counsel;

3) A signed declaration stating, under penalty of perjury, that you are a member of the Settlement Class;

4) A statement of all your objections to the Settlement, including your legal and factual basis for each objection; and

5) A statement of whether you intend to appear at the Fairness Hearing, either with or without counsel, and if with counsel, the name, bar number, address, and telephone number of your counsel who will attend.

You must file your objection with the Court (using the Court's electronic filing system or in any manner in which the Court accepts filings) and mail your objection to each of the following six (6) addresses, and your objection must be postmarked by **February 29, 2016**:

| CLERK OF THE COURT | ADMINISTRATOR | DEFENDANTS' COUNSEL |
|---|---|---|
| Clerk of the Court<br>Wilkie D. Ferguson, Jr. United States District Courthouse<br>400 North Miami Avenue<br>Miami, FL 33128 | Chimeno-Buzzi Text Settlement Administrator<br>P.O. Box 3656<br>Portland, OR 97208-3656 | Meredith Slawe<br>DRINKER, BIDDLE & REATH, LLP<br>ONE Logan Square, Suite 2000<br>Philadelphia, PA 19103 |

| CLASS COUNSEL | | |
|---|---|---|
| Robert R. Ahdoot<br>AHDOOT & WOLFSON, PC<br>1016 Palm Avenue<br>West Hollywood, CA 90069 | Frank S. Hedin<br>CAREY RODRIGUEZ MILIAN GONYA, LLP<br>1395 Brickell Avenue, Suite 700<br>Miami, FL 33131 | Joseph J. Siprut<br>SIPRUT PC<br>17 North State Street, Suite 1600<br>Chicago, IL 60620 |

In light of these requirements, the Objections have obvious deficiencies. Ms. O'Keefe failed to mail a copy of her Objection to the Claims Administrator, Defendants' Counsel, or any of the three designated Class Counsel, in total disregard of the Notice and the Court's Order.[6] With respect to Mr. Sweeney, although he mailed a copy of his Objection to Robert R. Ahdoot, Meredith C. Slawe and the Clerk of the Court, he failed to mail a copy to the Settlement Administrator or the other designated Class Counsel (Mr. Hedin and Mr. Siprut).[7] Moreover, the copies Mr. Sweeney did mail are postmarked March 1, 2016, and are thus untimely in view of the February 29, 2016 postmarking deadline. (*See* D.E. 136 at 6.) Finally, Mr. Sweeney failed to properly file his Objection "pursuant to the Court's CM/ECF system" or another acceptable conventional filing method. (D.E. 129 at 9.) Although the Clerk of the Court posted Mr. Sweeney's mailed Objection to the docket on March 7, 2016 (a full week after the deadline), Mr. Sweeney's failure to either electronically or conventionally file the Objection with the Court by February 29, 2016 is fatal. The Court's Order could not be more clear on this point: "Objections that are mailed to the Court (and not filed pursuant to the Court's CM/ECF system, or any other method in which the Court will accept filings, if any) … <u>shall not be received or considered by the Court</u> at the Fairness Hearing." (*Id.* (emphasis added).)

Because neither Ms. O'Keefe nor Mr. Sweeney complied with the requirements imposed by the Court and clearly stated in the Notice, neither of their Objections should "be received or considered by the Court at the Fairness Hearing." (*Id.*) Both Objections should be summarily dismissed.

### B. THE OBJECTIONS ARE SUBSTANTIVELY BASELESS.

Even if the Objections are not dismissed for failure to comply with procedural requirements, Mr. Sweeney's Objection should be overruled or stricken for lack of standing, and Ms. O'Keefe's Objection (and Mr. Sweeney's to the extent he has standing) should be overruled because they are both contrary to controlling Eleventh Circuit precedent and unaccompanied by any supporting evidence.

---

[6]    *See* Declaration of Robert Ahdoot, attached hereto as Exhibit "B" ("Ahdoot Decl."), at ¶ 4; Declaration of Joseph J. Siprut, attached hereto as Exhibit "C" ("Siprut Decl."), at ¶ 4; Declaration of Frank S. Hedin, attached hereto as Exhibit "D" ("Hedin Decl."), at ¶ 4; Declaration of Meredith C. Slawe, attached hereto as Exhibit "E" ("Slawe Decl."), at ¶ 4; Declaration of Richard Bithell, attached hereto as Exhibit "F" ("Bithell Decl."), at ¶ 4.

[7]    *See* Siprut Decl. at ¶ 4; Hedin Decl. at ¶ 4; Bithell Decl. at ¶ 3.

4

## 1.   Mr. Sweeney, A Non Class Member, Lacks Standing to Object.

Rule 23(e)(5) of the Federal Rules of Civil Procedure provides that "[a]ny class member may object" to a proposed settlement. Fed. R. Civ. P. 23(e)(5). However, "'non-class members have no standing to object,'" and the "party seeking to invoke the Court's jurisdiction – in this case, the Objectors – has the burden of establishing standing." *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09md2087, 2013 U.S. Dist. LEXIS 133413, at *61 (S.D. Cal. Sept. 17, 2013) (emphasis added); *see also In re TracFone Unlimited Serv. Plan Litig.*, No. C-13-3440 EMC, 2015 U.S. Dist. LEXIS 86719, at *35 (N.D. Cal. Aug. 10, 2015) (citing *In re First Capital Holdings*, 33 F.3d 29, 30 (9th Cir. 1994)) (holding that only an "aggrieved class member has standing to object").

Here, the standing requirements are plainly set forth in the Court's preliminary approval Order (D.E. 129) and the Court-approved Notice (D.E. 128-7), which instructed any potential objectors to provide in writing, *inter alia*, a signed declaration stating, under penalty of perjury, that he or she is a member of the Settlement Class.

Mr. Sweeney failed to demonstrate his Class membership in his Objection. He failed to submit a signed declaration stating, under penalty of perjury, that he is a member of the Settlement Class. Rather, Mr. Sweeney merely stated, not under oath, that "he believes that he is a member of the class[.]" (D.E. 136 at 1.) That is plainly insufficient and does not satisfy the Court's directives for demonstrating Class standing and asserting an objection.[8]

As it turns out, the reason why Mr. Sweeney failed to submit evidence demonstrating his Settlement Class membership is because he is not a member of the Settlement Class. At the request of Class Counsel, the Settlement Administrator compared Mr. Sweeney's cellular telephone number (from his Claim Form) against the entire database of numbers to which the Defendants sent text messages. (Bithell Decl. at ¶ 3.) As a result of their findings, the Defendants have submitted a sworn declaration stating that Mr. Sweeney's number is not in their database of text message recipients. (*Id.*) Accordingly, Mr. Sweeney is not a Settlement Class Member.

This is not the first time Mr. Sweeney has objected to the settlement of a class action of

---

[8]   There is ample precedent that bare assertions of class membership, like Brown's here, do not establish standing. *See, e.g.*, *Knisley v. Network Assocs.*, 312 F.3d 1123, 1128 (9th Cir. 2002) ("lack of standing should be apparent" for an objector who failed to submit proof of claim); *Feder v. Elec. Data Sys. Corp.*, 248 Fed. App'x 579, 581 (5th Cir. 2007) ("Allowing someone to object to settlement in a class action based on this sort of weak, unsubstantiated evidence would inject a great deal of unjustified uncertainty into the settlement process."); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2011 U.S. Dist. LEXIS 103698, at *8-*9 (S.D.N.Y. Aug. 25, 2011) (finding unsigned, unsworn, unauthenticated tax form to be to be insufficient to establish class membership).

which he is not a member. Just last month, in *In Re TRS Recovery Services, Inc. and Telecheck Services, Inc.*, Case No. 2:13-MD-2426-DBH (D. Maine, Feb. 10, 2016), a district court overseeing a multidistrict litigation overruled the very same boilerplate objections that he asserts here, finding that, just like in this case, Mr. Sweeney had not only failed to adequately assert class membership, but, after reviewing additional evidence, that he was in fact not a class member. The district court explained:

> The objector furnished no basis to conclude that he is even a class member. The defendants have the names of all the class members except those who conducted a transaction in Maine and paid a returned check fee but did not receive the RECR3 letter. The objector lives in Wisconsin, does not assert that he ever conducted such a transaction in Maine, and does not claim membership in the Maine class (Class 2). Thus, he should be included in the defendants' database (he is not). Moreover, his claim to membership is based only "on belief." Obj. to Proposed Settlement Agreement at 1 (ECF No. 121). His listed objections are without merit and appear to be a form document, *id.* at 2-3, that he has filed in other class action settlements. *See In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196, (N.D. Ohio Nov. 17, 2015) (Obj. of Patrick Sweeney (ECF No. 1968)); *see also Roberts v. Electrolux Home Prods., Inc.*, 2014 WL 4568632, at *12-15 (C.D. Cal. Sep. 11, 2014) (overruling Patrick Sweeney's objections and noting his "long history of representing objectors"); *Larson v. Trader Joe's Co.*, 2014 WL 3404531, at *6-7 & n.4 (N.D. Cal. July 11, 2014) (overruling objections and recognizing that "attorney Patrick Sweeney also has a long history of representing objectors in class action proceedings"). His objection is **OVERRULED**.

*TRS Recovery Servs.*, Case No. 2:13-MD-2426-DBH (D.E. 135 at 13 n.16).

Likewise in this case, because the uncontroverted evidence clearly demonstrates that Mr. Sweeney lacks standing to object, the Court <u>must</u> overrule or strike his Objection in its entirety, as it is "powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

### 2. The Objections Fail on Their Merits.

Finally, the Objections fail on their merits. The Objections raise four primary arguments: (1) Class Counsel's requested fee award is unreasonable (2) the Settlement's claims process is deficient; (3) the Settlement's release of liability is overbroad; and (4) the $10 million Settlement Fund is inadequate. Each argument is addressed in turn.[9]

---

[9]   Plaintiffs' motion for attorneys' fees has been referred to Magistrate Judge Torres for a report and recommendation in advance of the March 30, 2016 final fairness hearing. With that in mind, this opposition

6

### i. The Requested Attorneys' Fee Award Is Reasonable.

The Objections contend that Class Counsel's requested fee award of one-third of the Settlement Fund is unreasonable. The argument is without merit. The reasonableness of Class Counsel's requested fee award is confirmed by controlling Eleventh Circuit precedent, recent decisions by this very Court in similar TCPA cases, and each of the *Johnson* factors.

In the Eleventh Circuit, a fee award to class counsel is properly determined using the "percentage of recovery" method, *see Reyes, et al. v. AT&T Mobility Services, LLC*, No. 10-20837-CIV-MGC (S.D. Fla. June 21, 2013) (Cooke, J.) (D.E. 196 at 6) (citing *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001)), not the lodestar method proposed in the Objections. Indeed, "in *Camden I*, the court criticized the inefficiencies of lodestar approach, and other courts have called it into question because it 'creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation.'" *Wilson v. EverBank*, No. 14-CIV-22264, 2016 WL 457011, at *13 (S.D. Fla. Feb. 3, 2016) (quoting *In re Quantum Health Resources, Inc.,* 962 F. Supp. 1254, 1256 (C.D. Cal. 1997)). Accordingly, "[u]nder *Camden I,* courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all." *Checking Account Overdraft Litig.,* 830 F.Supp.2d at 1363 (citing *David,* 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010)); *Wilson*, 2016 WL 457011, at *13 (same); *see also* Alba Conte, ATTORNEY FEE AWARDS § 2.7, at 91 n. 41 ("The Eleventh ... Circuit[ ] repudiated the use of the lodestar method in common-fund cases").[10]

Ms. O'Keefe nevertheless contends that, even if the "percentage of recovery" method applies (which it certainly does), the Court should only award 20% of the Settlement Fund to Class Counsel. Ms. O'Keefe's recommendation is inconsistent with all of the recent decisions from this District and the Eleventh Circuit on this issue. As this Court recently held, awarding a percentage of one-third of the settlement fund is "consistent with the trend in this Circuit," *Reyes*, No. 10-20837-CIV-MGC (D.E. 196 at 6); *see also, e.g., Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market

---

brief addresses the attorneys' fee issue first, which will permit Judge Cooke to address the remainder of the issues addressed in this brief at the appropriate time.

[10]   The Objections contend that Class Counsel should have submitted detailed fee records or hourly rate breakdowns to confirm the reasonableness of its fee request. This argument is also without merit, because "[i]n the Eleventh Circuit, the lodestar approach should not be imposed through the back door via a 'cross-check.'" *Wilson*, 2016 WL 457011, at *13 (citing *Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1362).

rate in class actions); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming attorneys' fee award of 33.3% to class counsel, using 30% as starting benchmark). Indeed, one-third of the settlement fund is routinely awarded to Class Counsel in TCPA class action settlements and class action settlements generally in the Eleventh Circuit.[11]

Most recently, this very Court recently awarded one-third of the settlement fund to class counsel in *Soto v. The Gallup Organization, Inc.*, Case 0:13-cv-61747-MGC (S.D. Fla.) (Cooke, J.), a TCPA case in which the $12 million settlement fund provided less *pro rata* relief to each of the 6.2 million class members than the $10 million Settlement Fund provides to each of the 3.7 million class members in this case. Because the result for the Settlement Class in this case is superior to the result for the settlement class in *Soto*, and required significantly more attorney hours to obtain, it is hardly unreasonable for Class Counsel to request the same fee percentage that was awarded in *Soto*.

The *Johnson* factors further confirm the reasonableness of the requested award. Class Counsel worked long and hard, expending over 2,700 attorney hours, to secure the $10 million Settlement Agreement, and bore a very real risk of recovering nothing. From the outset, the case was haunted by the specter of imminent, adverse regulatory action by the Federal Communications Commission ("FCC"), including a petition to narrow the definition of "automatic telephone dialing system" to one that likely would not include the system used by the Defendants, and a petition to exempt calls and texts to "reassigned numbers" from TCPA liability and thereby immunize the Defendants' conduct underlying this case. But for Class Counsel's investment of thousands of attorney hours investigating and prosecuting these difficult, risky and undesirable claims, the Settlement Class Members would have received nothing.

At bottom, the Objections to the requested fee award rest on the subjective belief that this case just wasn't that hard. They claim that there were too many lawyers, too many hours, and not

---

[11] *See In re Terazosin Hydrochloride Antitrust Litig.*, No. 1:99–md–01317–PAS (S.D. Fla. Apr. 19, 2005) (D.E. 1557 at 8-10) (approving fee award as percentage of gross amount of common fund, stating: "Class Counsel are hereby awarded 33 1/3% of the gross Settlement Fund (plus interest thereon), arising out of the Settlement, before deduction of any costs, expenses, or incentive awards, as their fee award."); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 1:95–cv–02152–ASG  (S.D. Fla. May 30, 2003) (D.E. 626 at 7) (approving fee award of one-third of gross amount of common fund settlement plus $1.2 million in expenses); *Hosier v. Mattress Firm, Inc.*, No. 3:10-CV-294-J-32JRK, 2012 WL 2813960, at *4 (M.D. Fla. June 8, 2012) *report and recommendation adopted*, No. 3:10-CV-294-J-32JRK, 2012 WL 2838610 (M.D. Fla. July 10, 2012) (approving attorney fee award of 30% of gross amount of common fund settlement, before deduction of notice and settlement administration expenses); *Morefield v. NoteWorld, LLC*, No. 1:10-CV-00117, 2012 WL 1355573, at *6 (S.D. Ga. Apr. 18, 2012) (approving fee award of 30% of gross amount of common fund, exclusive of award of costs); *Atkinson v. Wal-Mart Stores, Inc.*, No. 8:08-CV-691-T-30TBM, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of gross amount of common fund).

8

enough litigation to justify a fee that is otherwise quite standard in the Eleventh Circuit. Unsupported by any evidence, the argument is based entirely upon the opinion of Mr. Sweeney, a professional objector, and Ms. O'Keefe's lawyer, a professional objector who does not regularly practice under the TCPA (or class actions at all, for that matter). The Objections to the requested fee award are nothing more than bald criticism of Class Counsel's litigation strategy, containing only subjective opinions about how much work Class Counsel *should* have done. The Court should decline these invitation to conduct a post-mortem analysis of Class Counsel's tactical decisions.

The Objections to the requested attorneys' fee award should be overruled in their entirety.[12]

### ii. The Claims Process In This Case Was Necessary And Efficient.

The Objections contend that the claims process is deficient on the following grounds: (1) it would be more efficient to, in lieu of sending Claim Forms, simply mail a check to every address located by the reverse-lookup procedure (D.E. 134 at 2-3); and (2) the claims process lacks a definitive timeframe or "reliable future oversight" and funding (D.E. 136 at 2-3). These Objections, which are supported by no evidence, fail for several reasons.[13]

Contrary to Ms. O'Keefe's Objection, the Settlement Administrator's use of Claim Forms to verify class membership is entirely appropriate, especially considering that an address obtained by the Settlement Administrator through a telephone number reverse-lookup procedure may not be the same address that was associated with that telephone number at the time a text message was sent by the Defendants. In other words, an individual who receives a Claim Form is not necessarily a

---

[12] Mr. Sweeney's Objection further objects on the basis that "[t]here are no estimates or caps on the amount of costs and expenses that Class Counsel intends to request … from the Settlement Fund." (D.E. 136 at 3.) This appears to be a vestige from a previous objection using the same boilerplate objections (and the product of a sloppy copy-and-paste job by Mr. Sweeney), because Class Counsel's motion for attorneys' fees makes clear that Class Counsel is <u>not requesting reimbursement of any costs or expenses</u> in addition to its fee request of one-third of the Settlement Fund.

[13] At the outset, it is worth noting that Ms. O'Keefe's Objection incorrectly characterizes this as a "claims made" settlement in which money not paid to Settlement Class Members is returned to the Defendants. In reality, the carefully negotiated Settlement Agreement ensures that <u>all</u> of the cash from the Net Settlement Fund will be distributed on a *pro rata* basis to eligible members of the Class, regardless of the number of claims eventually submitted and approved. Under no circumstances will any money revert back to the Defendants.

Also in need of correcting is Mr. Sweeney's Objection that "[t]he Notice is inadequate in that no alleged vilated states are references[.]" (D.E. 136 at 3.) This is factually incorrect, because the very first sentence of the Notice states: "A $10 million Settlement has been reached in a class action lawsuit about whether J.M. Hollister, LLC d/b/a Hollister Co. and/or Abercrombie & Fitch Co. (the "Defendants") sent text messages to wireless telephone numbers without prior express written consent of the recipients <u>in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227</u>." (D.E. 128-7 at 1 (emphasis added).)

9

Settlement Class Member. For precisely this reason, "a claims process is often used to ensure that money is fairly distributed for valid claims," *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 201 (D.D.C. 2011), and "to strike a proper balance between, on the one hand, avoiding fraudulent claims and keeping administrative costs low, and on the other hand, allowing as many class members as possible to claim benefits," *In re Lawnmower Engine Horsepower Mkt'g & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1010 (E.D. Wis. 2010). Thus, in this case, in order to mitigate fraud and mistake while lending administrative certainty to the distribution of monetary relief, the Claim Forms provided by the Settlement Agreement and preliminarily approved by the Court ask Class Members to verify their identity, current address, and, most important, cellular telephone number. Numerous courts have justified similar claims processes on this basis.[14]

  Ms. O'Keefe ignores the uncertainty, costs, and burden of the direct-distribution process she advocates. As discussed above, sending unsolicited checks to unverified addresses and recipients increases the risk of misappropriation; non-Class Members could fraudulently endorse misdirected settlement checks to themselves, and it would be impracticable to recover money from those individuals. Moreover, printing and mailing checks to millions of Settlement Class Members who

---

[14]  *See, e.g.*, *In re Apple iPhone 4 Prods. Liab. Litig.*, MDL No. 2188, 2012 WL 3283432, at *3 (N.D. Cal. Aug. 10, 2012) (finding that the claims process was not "overly burdensome" since, to file a claim, class members were required to provide only their name, address, serial number and to check a box verifying their reception problems; "the serial number requirement is a reasonable measure to avoid fraud"); *Hall v. AT&T Mobility LLC*, No. 07-CV-5325, 2010 WL 4053547, at *11 (D.N.J. Oct. 13, 2010) (rejecting argument "that the Settlement is unfair because Class members must prove their own membership by submitting proofs of claims"; "Courts have frequently upheld claims forms such as the one utilized in this case, and the Court finds it perfectly appropriate to require Class members to submit certain information proving that they are entitled to collect the relief awarded in this case."); *Lawnmower Engine*, 733 F. Supp. 2d at 1010 ("I agree that allowing class members to file claims without providing serial numbers would encourage fraudulent claims, in that persons could falsely represent that they purchased a lawnmower in the past but no longer have it or any records of it. Although the claims administrator could take steps to validate claims submitted without serial numbers in order to weed out fraudulent claims -- such as comparing each incomplete claim to records in the defendants' possession or reviewing receipts and other paperwork submitted by class members -- requiring the claims administrator to do so for a large number of claims would substantially increase administrative costs."); *Milliron v. T-Mobile*, No. 08-CV-4149, 2009 WL 3345762, at *6 (D.N.J. Sept. 14, 2009) ("[T]he Court finds it perfectly appropriate to require Class members to submit certain information proving that they are entitled to collect the relief awarded in this case."); *In re Educational Testing Serv. Praxis Principles of Learning & Teaching*, 447 F. Supp. 2d 612, 627 (E.D. La. 2006) (observing that "a claims process provided for greater accountability and protected against fraud," and that requiring "the claimant to submit a claim form is standard procedure in cases of this kind"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 235 (S.D. Ill. 2001) ("The requirement of an affirmation on the claim form, under penalty of perjury, from the Settlement Class Member seeking reimbursement for an Eligible Late Fee was appropriate and not objectionable. Notarization of claim forms is routinely required in class action settlements to assure that the fund is shared among proper and deserving claimants, and here only an affirmation was required from Class Members.") (internal quotation marks omitted).

never asked for them would greatly increase the cost of administering the Settlement. Unsolicited checks are likely to be discarded or set aside on a massive scale, creating an accounting nightmare for the Parties and the Settlement Administrator alike. "In such situations, administrators 'get to the point where you never close the case.'" *In re Educational Testing Serv. Praxis Principles of Learning & Teaching*, MDL No. 1643, 2006 WL 3332829, at *2 (E.D. La. Nov. 15, 2006) (overruling objection that a claims process was unnecessary "because the names and addresses of [class members] are known," and explaining that a claims process prevents checks from being mailed to unverified and old addresses, thereby reducing undeliverable mail and fraudulently cashed checks); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 594 (N.D. Ill. 2011) (same). For these reasons, the Claim Form's verification is the best way to confirm that the right persons receive the right payments at the right addresses, while also reducing administrative accounting problems. *See, e.g., In re Remeron End-Payor Antitrust Litig.*, No. 02-CV-2007, 2005 WL 2230314, at *18 (D.N.J. Sept. 13, 2005) (noting, in response to objector's "suggestion to automatically distribute money to those who purchased" the defendant's product in lieu of sending claim forms, that "there are practical problems with the suggestion, including those associated with blindly sending checks to addresses that may be outdated.").

Mr. Sweeney objects to the claims process on the basis that it "fails to require reliable future oversight, accountability and reporting" by Class Counsel. (D.E. 136 at 2.) This is simply incorrect, because the Settlement Agreement sets forth the following duties that Class Counsel must undertake until the completion of the process:

> <u>Following the Claim Deadline, the Settlement Administrator shall provide a report of any rejected claims to Defense Counsel and Class Counsel. If Class Counsel do not agree with the rejection of a claim, they shall bring it to the attention of Defense Counsel, and the Parties shall meet and confer and attempt, in good faith, to resolve any dispute regarding the rejected claim.</u> Following their meet and confer, the Parties will provide the Settlement Administrator with their positions regarding the disputed, rejected claim. The Settlement Administrator, after considering the positions of the Parties and, if appropriate, seeking any additional information from the Settlement Class Member, will make the final decision in its sole discretion.
>
> The Settlement Administrator shall create and maintain the Settlement Website, a toll-free information line with taped frequently asked questions ("FAQs") and a voicemail box, a centralized post-office box to correspond with Settlement Class Members, <u>at the direction of the Parties</u>.

11

> <u>At any time during the claims' process, if the Settlement Administrator has a reasonable suspicion of fraud, the Settlement Administrator shall immediately notify both Class Counsel and Defense Counsel of that fact and the basis for its suspicion. Class Counsel and Defense Counsel shall endeavor to reach an agreed-upon solution to any suspected fraud</u> and, if necessary, the Parties may suspend the claims' process and promptly seek assistance from the Court.

(D.E. 126-1 at 17-18 (emphasis added).) Because these provisions impose on Class Counsel various accountability and reporting duties until the completion of the claims process, this Objection should be overruled.

Mr. Sweeney further objects to the claims process on the grounds that "[n]o timeframe for completing administration of the monetary relief is set[.]" (D.E. 136 at 2.) This Objection is also belied by the terms of the Settlement Agreement, which impose on the Settlement Administrator the following deadlines for distributing the monetary relief to the Class:

> Within thirty (30) Days after the Effective Date, or another such time as the Parties agree upon after final approval of the Settlement by the Court, the Settlement Administrator shall cause the Cash Awards in the form of checks to be distributed to Settlement Class Members who submit a Valid Claim. All payments issued to Settlement Class Members via check will state on the face of the check that the check will expire and become null and void unless cashed within ninety (90) Days after the date of issuance. To the extent that a check issued to a Settlement Class Member is not cashed within ninety (90) Days after the date of issuance, the check will be void, and the Parties shall meet and confer regarding the appropriate disposition of any resulting unclaimed funds, with the proposed disposition to be presented thereafter to the Court for approval by joint motion of the Parties. Under no circumstances shall any amount of the Settlement Fund, including any unclaimed funds, revert back to Defendants.

(D.E. 126-1.) In light of the foregoing provision, which clearly sets a timeframe for distribution of monetary relief, Mr. Sweeney's Objection should be overruled.

In sum, neither Ms. O'Keefe nor Mr. Sweeney have submitted any evidence or cited to any legal authority that refutes the administrative concerns associated with a direct-distribution of settlement funds, or that demonstrates a lack of reliability or future oversight with respect to the claims process. Accordingly, the Objections to the claims process should be overruled in their entirety. *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (affirming final approval of nationwide class action settlement where "[t]he objectors presented no evidence" to

12

support their arguments).

### iii. The Settlement's Release Is Not Overbroad.

Ms. O'Keefe contends that the Settlement's release is overbroad and unfair to the class (D.E. 134 at 3-5). The argument is wrong as a matter of law.

The Objection correctly points out that the release provisions of the Settlement Agreement encompass more claims than just the TCPA claim that was asserted in the operative complaint in this litigation. Specifically, the release captures all claims "<u>arising from or relating to allegedly unauthorized text or other messages or phone calls by the Released Persons to the Releasing Persons</u>, including, without limitation, the causes of action and allegations made by Plaintiffs in the Litigation as well as claims and allegations that the Released Persons violated the TCPA or any similar claims under the consumer protection and/or deceptive trade practices acts and common law of any state or the District of Columbia." (D.E. 126-1, Settlement Agreement ¶ FF) (emphasis added).

However, such releases are not improper, and in fact are designed to prohibit precisely the type of end run around the Settlement Agreement that Ms. O'Keefe proposes in her objection. If a Class Member could turn around and sue the Defendants in a different court under a different legal label based on the same alleged conduct, the Settlement Agreement would be totally illusory. *See, e.g., In re Mexico Money Transfer Litig.*, 267 F.3d 743, 749 (7th Cir. 2001) (noting that with respect to settlement of federal RICO fraud claims, a defendant may settle simply to avoid the "drumbeat" of "similar suits ... filed in many state and federal courts across the nation"). For precisely this reason, Judge Beth Bloom, just last month, thoroughly analyzed and rejected this same objection in the course of granting final approval to a class action settlement:

> Too narrow a release would leave future defendants with little incentive to settle class action lawsuits on a claims-made basis. A release of the Settlement Class's claims is a necessary precondition to Defendants' agreement to settle; without it, Defendants could be subject to individual lawsuits by individual class members for years to come, and would incur the additional costs associated with litigating those actions. Class members who wish to retain their claims and except themselves from the settlement's terms, including the release, have been given the opportunity to do so by opting out. This is fair, reasonable, and sufficient under the law: 'There is nothing unusual or unfair about Defendant's interest in finality and repose, nor in its desire to be released from Class Members' claims, and not be threatened with the prospect of potential double recoveries. Indeed, there would be no reason for a defendant to enter into a settlement of a class action that would leave it subject to additional class actions

asserting the same or similar claims.'

*Wilson*, 2016 WL 457011, at *21 (quoting *Faught v. Am. Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2010 WL 10959223, at *15 (N.D. Ala. Apr. 27, 2010) *aff'd*, 668 F.3d 1233 (11th Cir. 2011)).

Indeed, it well-established in the Eleventh Circuit and elsewhere that, "[i]n class action settlements, releases may include all claims that arise out of the same course of conduct alleged in the Complaint, known and unknown claims, or even claims over which the court lacked jurisdiction." *Wilson*, 2016 WL 457011, at *21; *Faught v. Am. Home Shield Corp.,* 2010 WL 10959223, at *15 (N.D. Ala. Apr. 27, 2010) (same); *see also Thomas v. Blue Cross & Blue Shield Ass'n,* 333 F. App'x 414, 420 (11th Cir. 2009) ("Given a broad enough settlement agreement ... and provided that [a class member] had notice of it and an opportunity to opt out, it is perfectly acceptable for the [settling class] action to preclude his claims, even if they could not have been part of that action itself."); *see also, e.g., Hanlon*, 150 F.3d at 1025 (upholding decision to enjoin state court action where settlement agreement in federal case released any claims "arising out of or relat[ing] to" the subject of the factual allegations in the case); *In re Prudential Ins. Co. of Am. Sales Practice Litig.,* 148 F.3d 283, 325 n.82 (3d Cir. 1998) ("a federal court may release claims which are not in the complaint provided they are based on the 'same factual predicate' "; holding that "other claims" relating to sales practices at issue were properly released because "they arose from the conduct alleged in the Complaint"); *In re VMS Secs. Litig.,* 103 F.3d 1317, 1320 (7th Cir. 1996) (upholding decision to enjoin state court action where settlement agreement in federal case released any claims "arising out of or in any way relating to" the subject of factual allegations in the case).

Thus, in this case, the provision of the Settlement Agreement releasing all claims "arising from or relating to" the transmission of unsolicited text messages, the factual basis of the complaint, is entirely permissible, and in fact was carefully drafted with the foregoing legal authorities in mind to avoid being overbroad. Ms. O'Keefe cites no legal authority for the proposition that a release such as this, which is tailored to the underlying conduct alleged in the complaint, is either unfair or overbroad.

The Court should overrule Ms. O'Keefe's Objection to the scope of the Settlement Agreement's release in its entirety.

### iv. The Settlement Provides Substantial Benefit to the Settlement Class.

Ms. O'Keefe contends that the $10 million Settlement Fund is inadequate because it does not recover a sum comparable to $1.9 billion dollars, the theoretical maximum recovery for all of over 3.7 million class members if each of them filed and won their individual lawsuits. (D.E. 134 at

14

5-6.)[15]  This fantastical objection bears no relationship to the real life circumstances of this case.

Class Counsel entered into the Settlement Agreement in the face of significant litigation risks, which persist to this day.  For instance, in April 2015, eight months into this case, the Supreme Court granted certiorari in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 1892 (2015), a case in which the Court will consider whether an alleged violation of a statutory right created by Congress, without more, confers on a plaintiff Article III standing to sue in federal court. Given that the damages sought by the Plaintiffs in this case were purely statutory in nature, a broad decision in favor of the petitioners in *Spokeo* could have easily extinguished Plaintiffs' and the Settlement Class Members' Article III standing in federal court, leaving them without any chance of recovery.  The pendency of *Spokeo* thus concerned Class Counsel a great deal, and was a major factor motivating Class Counsel's decision to enter into the Settlement Agreement.

Even assuming the risk of an adverse decision in *Spokeo* (and the inherent risks associated with class certification) did not exist, Plaintiffs would surely have recovered nothing had they blindly pressed this case for $1.9 billion, or even a fraction of that sum.  Bankruptcy is not the preferred outcome of class action practice.  The Settlement reached by Class Counsel ensures that the class will receive fair, adequate, reasonable, and *meaningful* relief.  It is an excellent result by any measure. The Court should overrule Objections to the adequacy of the Settlement Fund in their entirety.

### III. CONCLUSION

For the foregoing reasons, the Court should overrule the Objections in their entirety.

Dated:  March 9, 2016　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　By: /s/ David P. Milian
　　　　　　　　　　　　　　　　　　　　　David P. Milian
　　　　　　　　　　　　　　　　　　　　　*dmilian@careyrodriguez.com*
　　　　　　　　　　　　　　　　　　　　　Frank S. Hedin
　　　　　　　　　　　　　　　　　　　　　*fhedin@careyrodriguez.com*
　　　　　　　　　　　　　　　　　　　　　**CAREY RODRIGUEZ**
　　　　　　　　　　　　　　　　　　　　　**MILIAN GONYA, LLP**
　　　　　　　　　　　　　　　　　　　　　1395 Brickell Avenue, Suite 700
　　　　　　　　　　　　　　　　　　　　　Miami, Florida 33131
　　　　　　　　　　　　　　　　　　　　　Telephone: (305) 372-7474
　　　　　　　　　　　　　　　　　　　　　Facsimile: (305) 372-7475

---

[15]　Mr. Sweeney objects on the ground that "[s]ome *cy pres* procedure needs to be articulated so that Class Members and the Court can intelligently comment, object or approve the appropriateness of the *cy pres* procedure[.]"  (D.E. 136 at 3.)  This objection appears to be another vestige from a previous objection filed by Mr. Sweeney in a different case, because the Settlement in this case has no *cy pres* component.

Robert Ahdoot*
*rahdoot@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
1016 Palm Avenue
West Hollywood, California 90069
Tel: 310.474.9111
Fax: 310.474.8585

Joseph J. Siprut*
*jsiprut@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.241.1260

*Proposed Settlement Class Counsel*

Scott D. Owens
*scott@scottdowens.com*
Patrick C. Crotty
*patrick@scottdowens.com*
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954.589.0588
Fax: 954.337.0666

*Liaison Counsel*

*\*Admitted Pro Hac Vice*

16

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF, and on all counsel or parties of record on the Service List below by electronic mail and Fedex mail.

*/s/ David P. Milian*

## SERVICE LIST

**Patrick S. Sweeney**
2590 Richardson Street
Madison, WI 53711
310-339-0548
Email: patrickshanesweeney@gmail.com
*Pro Se*

**Scott Mancinelli**
156 West Washington Avenue
Zeeland, MI 49464
616-772-5221
Email: scottm@hvplaw.com
*Counsel for Molly O'Keefe*